## RYAN ET AL. v. UNITED STATES.

1. Sureties on a bond for the transportation of tobacco from one district to another, in the condition of which, the number of boxes and pounds of tobacco are given, and the kind of tobacco described, are responsible for the delivery at the proper place of the *tobacco*, and not the boxes in which it was supposed to be, but never was.
2. The fraud of the principal in filling the boxes with other substances than tobacco before they left his warehouse, does not release the sureties from this obligation.
3 Nor does the carelessness of the inspecting officer, though it made the fraud of the principal in the bond *easier* of accomplishment, release the sureties on his transportation bond.

* Ex parte Bradley, 7 Wallace, 364.

ERROR to the Circuit Court for Indiana; the case, as appeared by a special finding of the court, being thus:

John May, a manufacturer of tobacco, at Indianapolis, in the sixth collection district of Indiana, had a quantity of plug tobacco in his store on which he had not paid the government taxes. Representing to the assessor and collector of his district that he wished to "transport" it from his factory to a bonded warehouse, Class B, in New York, he got permission to do so, on executing the usual transportation bond with surety.* He did accordingly execute such bond, in the penalty of $10,000, with one Ryan and another as his sureties. The condition of the bond was:

"That if the above-bounden John May shall transport or cause to be transported, and within twenty days from the date hereof shall complete the transportation of the *following described merchandise*, viz.,

| Marks. | Serial numbers. | No. of packages. | Articles. | No. of lbs. | Rate of tax. | Amt. of tax. |
|---|---|---|---|---|---|---|
| △ B ▽ | | 110 boxes | PLUG TOBACCO. | 11,928 | 40c. | $4771 20 |

from the manufactory owned by John May, at Indianapolis, directly to the thirty-second district of the State of New York, and shall deliver the same to the collector of said district, and store or cause the *same* to be stored in a bonded warehouse, Class B, in said district, according to law, then this obligation is to be void; otherwise to abide and remain in full force and virtue."

Before executing and delivering the bond, May exhibited 110 boxes to the inspector of tobacco and represented to him that they contained plug tobacco of a quality subject to a duty of 40 cents a pound. The inspector did not examine the contents of the boxes, the same being closed and nailed up so as to exclude a view of the contents. The boxes were

---

* The reader is aware, of course, that the effect of a "transportation" is to relieve the property from tax at the place where it is manufactured, and to make it subject to the tax at that place to which it is transported.

duly branded by the inspector as containing plug tobacco.
After the execution of the bond, and after its delivery to
the officers of the United States, May shipped to the thirty-
second collection district of New York the identical 110
boxes exhibited as aforesaid to the inspector, the same being
the boxes branded by him, and the boxes were delivered in
a bonded warehouse, Class B, in said thirty-second district
of New York.   The collector of that district certified to the
collector of the sixth collection district of Indiana that the
boxes had been so received, and the usual bond executed
therefor by the consignee, and thereupon the collector of
the collection district of Indiana entered the transportation.
bond given by May and his sureties "cancelled."  The certifi-
cate of the collector of the collection district of New York,
and the entry of cancellation by the collector of the district
of Indiana, were made without knowing what the boxes
contained.

The boxes, after their delivery in the bonded warehouse,
New York, were discovered to contain nothing but ashes,
brickdust, brickbats, tobacco remnants, &c.   They contained
no tobacco in plug.   The sureties had no knowledge of the
contents of the boxes at any time before their arrival and
inspection in the bonded warehouse at New York; they ex-
ecuted the bond in good faith.   The thing, in short, was a
fraud practiced by May, who, by means of this pretence of
transporting the plug tobacco to New York, was enabled to
withdraw it from the manufactory at Indianapolis and cheat
the government out of its revenue.   For after the bond was
given, and the 110 boxes sent off, May could, without ob-
servation, *smuggle* away as much plug tobacco still in his
factory as the 110 boxes would hold (about 12,000 lbs.) the
tax upon which was still unpaid.   By pretending to remove
to New York what the 110 boxes would hold he could obtain
credit for it on the assessor's lists, and then its *disappearance*
would be a matter of course.   The bond enabled him to re-
move not only the boxes, but the tobacco as well, *and the
latter need not go to New York.*

Being indicted for this fraud, May fled the country; and

being wholly insolvent, the United States sued Ryan and the other surety upon the transportation bond already mentioned. The court below, on the case as above stated, gave judgment against them and they took this writ of error.

*Messrs. McDonald and Butler, for the plaintiffs in error,* argued that inasmuch as the court found that the boxes were delivered at the proper place in New York, in the precise condition in which they were when they left the manufactory, the sureties had complied with the condition of their bond; that the fraud committed by May was unknown to them, and was successful only by reason of the negligence of the revenue officer who examined the boxes before they left the factory, and who branded them as containing plug tobacco.

The learned counsel appended to their brief certain "Rules" prescribed by the Internal Revenue Bureau, a strict observance of which, they conceived, might have prevented the fraud.

*Mr. S. F. Phillips, Solicitor-General, contra.*

Mr. Justice MILLER delivered the opinion of the court.

The condition of the bond describes the subject of it with great particularity. It calls it merchandise, and besides giving the number of boxes, calls it plug tobacco. It also gives the precise number of pounds, the tax for which each pound was liable, and the aggregate of the tax. The condition is that this *tobacco* shall be transported from the manufactory where it then was to the proper warehouse in New York, and on the performance of this condition the bond for $10,000 was to be void, and not otherwise. That the condition was to transport the plug tobacco, and not the boxes in which it was supposed to be, is too obvious for argument. Who is to be responsible for the fact that the tobacco was never in the boxes; the persons who gave this bond binding themselves that May would deliver 11,928½ pounds of plug tobacco in New York, or the party for whose security it was given, and who was to lose if it was not so

delivered? The question admits of but one answer. When the sureties joined their principal in such a bond, it was their duty to protect themselves by seeing that the tobacco for which they were responsible was so transported, and if they trusted to him instead of making the requisite examination and supervision of the transaction, they must bear the loss sustained by this misplaced confidence.

It is urged, however, that the officer whose duty it was to examine these boxes did it in such a negligent manner that the success of the fraud is to be attributed to his carelessness.

The finding of the court is, that the inspector did not examine the contents of said boxes, the same being closed and nailed up so as to exclude a view of the contents, and that they were duly branded by him as containing plug tobacco.

The Circuit Court does not find that this was negligence, and we are not prepared here to say on this slight statement, as matter of law, that it was negligence. But if it were negligence we are of opinion that it was not such as would relieve the sureties from an obligation to the United States, voluntarily assumed by them, that 110 boxes containing 11,928½ pounds of plug tobacco should be delivered by their principal in New York. The very purpose of their bond was to secure the United States against the fraud of their principal, and the fraud was committed by him, in the very matter which the bond was designed to guard against. To say that the carelessness of the revenue officer made this fraud easier of accomplishment, can be no release of the sureties from their obligation. Some rules prescribed by the Internal Revenue Bureau for the guidance of these officers in reference to transportation of tobacco in bond, are annexed to the brief of the plaintiffs in error. They are not made a part of the record by bill of exceptions or otherwise, and are not, we think, matter for our judicial cognizance. If they were, we see nothing in them to change the opinion we have formed without them, that the judgment of the Circuit Court holding the sureties liable on their bond was right. It is, therefore,

AFFIRMED.