(Slip Opinion)  OCTOBER TERM, 2005  1

Syllabus

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## SCHEIDLER ET AL. *v.* NATIONAL ORGANIZATION FOR WOMEN, INC., ET AL.

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT

No. 04–1244. Argued November 30, 2005—Decided February 28, 2006*

Respondents, a national nonprofit organization that supports the legal availability of abortions and two health care clinics that perform abortions, filed a class action alleging that petitioners, individuals and organizations that oppose legal abortion, engaged in a nation-wide conspiracy to shut down abortion clinics through violence and other unlawful acts. Arguing that petitioners' activities amounted in context to extortionate acts that created a pattern of racketeering activity, respondents based their claims on, *inter alia,* the Hobbs Act, which makes it a federal crime to "obstruc[t], dela[y], or affec[t] commerce . . . by . . . robbery or extortion . . . or commit[ting] or threaten[ing] physical violence to any person or property in further-ance of a plan or purpose to do anything in violation of this section,*"* 18 U. S. C. §1951(a), and on the Racketeer Influenced and Corrupt Organizations Act (RICO), which defines a proscribed "pattern of racketeering activity," §1962(a), in terms of certain predicate acts that include extortion, see §1961(1). After trial, the jury concluded that petitioners violated RICO's civil provisions, the Hobbs Act, and other extortion-related laws. In *Scheidler* v. *National Organization for Women, Inc.,* 537 U. S. 393 *(NOW II),* this Court reversed the Seventh Circuit's affirmance of the jury's award of damages and the District Court's issuance of a permanent nationwide injunction. The Court noted that the Hobbs Act defines "extortion" as necessarily including the improper " 'obtaining of property from another,' " *id.,* at 400

———————

*Together with No. 04–1352, *Operation Rescue* v. *National Organiza-tion for Women, Inc., et al.,* also on certiorari to the same court.

(quoting §1951(b)(2)); observed that the claimed "property" here consisted of a woman's right to seek clinic services and the rights of clinic staff to perform their jobs and of clinics to provide care free from wrongful threats, violence, coercion, and fear, *id.,* at 400–401; decided that characterizing petitioners' actions as an "obtaining of property from" respondents went well beyond permissible boundaries, *id.*, at 402; and held, therefore, that petitioners did not commit extortion as defined by the Hobbs Act, *id.*, at 397. The Court concluded that, because all of the predicate acts supporting the jury's finding of a RICO violation had to be reversed, the judgment that petitioners violated RICO must also be reversed, *id.,* at 411. On remand, the Court of Appeals decided that, because this Court had not considered respondents' alternative theory that the jury's RICO verdict rested not only on extortion-related conduct, but also on four instances (or threats) of physical violence *unrelated* to extortion, the cases must be remanded to the District Court to determine whether these four acts alone might constitute Hobbs Act violations (sufficient, as predicate acts under RICO, to support the injunction).

*Held:* Physical violence unrelated to robbery or extortion falls outside the Hobbs Act's scope. Congress did not intend to create a freestanding physical violence offense. It did intend to forbid acts or threats of physical violence in furtherance of a plan or purpose to engage in what the Act refers to as robbery or extortion (and related attempts or conspiracies). Pp. 5–11.

(a) The more restrictive reading of the statutory text—the one tying the prohibited violence to robbery or extortion—is correct. For one thing, it is the more natural reading. The text preceding the physical violence clause does not forbid *obstructing, delaying, or affecting commerce;* rather, it forbids *obstructing, delaying, or affecting commerce "by robbery or extortion."* §1951(a) (emphasis added). This means that behavior that obstructs, delays, or affects commerce is a "violation" of the statute only if it also involves robbery or extortion (or related attempts or conspiracies). Consequently, the reference in the physical violence clause to actions or threats of violence "in furtherance of a plan or purpose *to do anything in violation of this section*" seems to mean acts or threats of violence in furtherance of a plan or purpose *to engage in robbery or extortion*, for that is the only kind of behavior that the section otherwise makes a violation. This restrictive reading is further supported by the fact that Congress often intends such statutory terms as "affect commerce" or "in commerce" to be read as terms of art connecting the congressional exercise of legislative authority with the constitutional provision (here, the Commerce Clause) granting that authority. See, *e.g., Allied-Bruce Terminix Cos.* v. *Dobson,* 513 U. S. 265, 273. Such jurisdic-

tional language may limit, but it will not primarily define, the behavior that the statute calls a "violation" of federal law. Cf. *Jones* v. *United States,* 529 U. S. 848, 854. Moreover, the statute's history supports the more restrictive reading: Both of the Hobbs Act's predecessor statutes made clear that the physical violence they prohibited was not violence in furtherance of a plan to injure commerce, but violence in furtherance of a plan to injure commerce through coercion or extortion (1934 Act) or through extortion or robbery (1946 Act). The Hobbs Act's legislative history contains nothing to the contrary. That the present statutory language is less clear than the 1946 version does not reflect a congressional effort to redefine the crime. To the contrary, Congress revised the Act's language in 1948 as part of its general revision of the Criminal Code, which "was not intended to create new crimes but to recodify those then in existence." *Morissette* v. *United States,* 342 U. S. 246, 269, n. 28. The Court will not presume the revision worked a change in the underlying substantive law absent a clearly expressed intent to do so. *Keene Corp.* v. *United States,* 508 U. S. 200, 209. Here there is no evidence of any such intent. Finally, respondents' interpretation broadens the Hobbs Act's scope well beyond what case law has assumed. It would federalize much ordinary criminal behavior, ranging from simple assault to murder, that typically is the subject of state, not federal, prosecution. Congress did not intend the Hobbs Act to have so broad a reach. See, *e.g., NOW II, supra*, at 405. Other Courts of Appeals have rejected respondents' construction of the Act. And in 1994, Congress enacted the Freedom of Access to Clinic Entrances Act, 18 U. S. C. §248(a)(3), which was aimed specifically at the type of activity at issue in this litigation, thereby suggesting that Congress did not believe that the Hobbs Act already addressed that activity. Pp. 5–9.

  (b) Respondents' reliance on the canon of statutory construction favoring interpretations that give a function to each word in a statute, thereby avoiding linguistic superfluity, is misplaced. They claim that, because the definitions of robbery or extortion (or related attempts or conspiracies) already encompass robbery or extortion that take place through acts of violence (or related threats), see §§1951(b)(1) and (2), there would be no reason for §1951(a) to contain its physical violence clause unless Congress intended to create a free-standing offense. Petitioners, however, have found a small amount of additional work for the clause to do. The Scheidler petitioners point to a hypothetical mobster who threatens violence and demands payment from a business. Those threats constitute attempted extortion; but the subsequent acts of violence against a noncomplying business by the mobster's subordinates might not constitute attempted extortion or be punishable as a conspiracy to commit extortion if the sub-

ordinates were not privy to the mobster's plan, absent the specific prohibition of physical violence in furtherance of a plan to commit extortion. The Government adds that the clause permits prosecutors to bring multiple charges for the same conduct; *e.g.,* a robber who injured bystanders could be charged with the separate Hobbs Act crimes of robbery and of using violence in furtherance of the robbery. While this additional work is concededly small, Congress' intent is clear. Interpretive canons are designed to help courts determine what Congress intended, not to lead them to interpret the law contrary to that intent. Pp. 9–11.

91 Fed. Appx. 510, reversed and remanded.

BREYER, J., delivered the opinion of the Court, in which all other Members joined, except ALITO, J., who took no part in the consideration or decision of the cases.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

Nos. 04–1244 and 04–1352

JOSEPH SCHEIDLER, ET AL., PETITIONERS
04–1244                    *v.*
NATIONAL ORGANIZATION FOR WOMEN, INC., ET AL.

OPERATION RESCUE, PETITIONER
04–1352                    *v.*
NATIONAL ORGANIZATION FOR WOMEN, INC., ET AL.

ON WRITS OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE SEVENTH CIRCUIT

[February 28, 2006]

JUSTICE BREYER delivered the opinion of the Court.

A section of Title 18 of the United States Code (called the Hobbs Act) says that an individual commits a federal crime if he or she "obstructs, delays, or affects commerce" by (1) "robbery," (2) "extortion," or (3) "commit[ting] or threaten[ing] *physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section*." §1951(a) (emphasis added). The dispute in these cases concerns the meaning of the underscored words, in particular the words, "in furtherance of a plan or purpose to do anything in violation of this section." Does this phrase refer to (violence committed pursuant to) those plans or purposes that affect interstate commerce *through robbery or extortion*? Or does it refer to (violence committed pursuant to) those plans or purposes that affect interstate commerce, plain and simple? If the former, the

statute governs only a limited subset of violent behavior, namely, behavior connected with robbery and extortion. If the latter, the statute governs a far broader range of human activity, namely, all violent actions (against persons or property) that affect interstate commerce. In our view, the former, more restrictive reading of the Act is the correct interpretation.

I

Petitioners are individuals (and organizations) who engage in pro-life, anti-abortion protest activities. Respondents are health care clinics that perform abortions and a pro-choice national nonprofit organization that supports the legal availability of abortions. In 1986, (pro-choice) respondents, believing that (pro-life) petitioners had tried to disrupt activities at health care clinics that perform abortions through violence and various other unlawful activities, brought this legal action, which sought damages and an injunction forbidding (pro-life) petitioners from engaging in such activities anywhere in the Nation.

Respondents based their legal claims upon the Hobbs Act, certain other laws that forbid extortion, and a federal antiracketeering statute, the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U. S. C. §1962. Respondents argued that petitioners' clinic-related protest activities amounted in context to extortion. They added that these extortionate acts created a "pattern of racketeering activity"—a pattern that RICO defines in terms of certain predicate acts that include acts of extortion. See §1961(1) (Supp. III). And they sought a permanent injunction, which they believed RICO authorized. See §1964 (2000 ed.).

Initially, the District Court dismissed their complaint. It concluded that RICO requires proof that the alleged criminal acts were motivated by an economic purpose—a purpose that is lacking here. *National Organization for*

*Women, Inc.* v. *Scheidler*, 765 F. Supp. 937 (ND Ill. 1991). The Court of Appeals for the Seventh Circuit affirmed. *National Organization for Women, Inc.* v. *Scheidler*, 968 F. 2d 612 (1992). But this Court held that the statute "requires no such economic motive," and therefore reversed the Court of Appeals and remanded the case for further proceedings. *National Organization for Women, Inc.* v. *Scheidler,* 510 U. S. 249, 252 (1994).

After trial, the jury found that petitioners had engaged in a host of extortionate, or extortion-related, acts. It awarded treble damages to two of the respondents (a matter not at issue here) and the District Court entered a nationwide injunction. See §§1964(a), (c). The Court of Appeals affirmed. 267 F. 3d 687 (2001).

This Court again reversed. *Scheidler* v. *National Organization for Women, Inc.,* 537 U. S. 393 (2003) *(NOW II)*. We noted that the Hobbs Act defines "extortion" as necessarily including the improper "'obtaining of property from another.'" *Id*., at 400 (quoting §1951(b)(2)). We pointed out that the claimed "property" consisted of "a woman's right to seek medical services from a clinic, the right of the doctors, nurses or other clinic staff to perform their jobs, and the right of the clinics to provide medical services free from wrongful threats, violence, coercion and fear." 537 U. S., at 400–401 (internal quotation marks omitted). We decided that "[w]hatever the outer boundaries may be, the effort to characterize petitioners' actions here as an 'obtaining of property from' respondents is well beyond them." *Id*., at 402. Accordingly, we held that "because they did not 'obtain' property from respondents," petitioners "did not commit extortion" as defined by the Hobbs Act. *Id*., at 397. We found that the state extortion law violations, and other extortion-related violations, were flawed for the same reason and must also be set aside. *Id*., at 410.

Our opinion concluded:

"Because all of the predicate acts supporting the jury's
finding of a RICO violation must be reversed, the
judgment that petitioners violated RICO must also be
reversed. Without an underlying RICO violation, the
injunction issued by the District Court must necessar-
ily be vacated." *Id.*, at 411.

On remand, the Court of Appeals did not order the
District Court to terminate the cases or to vacate its in-
junction. Instead, the Court of Appeals considered re-
spondents' argument that the jury's RICO verdict rested
not only upon many instances of extortion-related conduct,
but also upon four instances (or threats) of physical vio-
lence *unrelated* to extortion. 91 Fed. Appx. 510, 512
(2004). The Court of Appeals decided that the parties had
not presented this theory to this Court and, as a result, we
had no occasion to consider whether these four acts alone
might constitute Hobbs Act violations (sufficient, as predi-
cate acts under RICO, to support the nationwide injunc-
tion). See *id.*, at 513. The Court of Appeals remanded the
cases to the District Court to make that determination.
*Ibid.*

Petitioners sought certiorari to review this ruling. We
granted the writ to consider the following three questions:

> (1) Whether the Court of Appeals improperly disre-
> garded this Court's mandate in *NOW II* by holding
> that the injunction issued by the District Court might
> not need to be vacated;
> (2) Whether the Hobbs Act forbids violent conduct
> unrelated to extortion or robbery; and
> (3) Whether RICO authorizes a private party to ob-
> tain an injunction.

We now answer the second question. We hold that physi-
cal violence unrelated to robbery or extortion falls outside
the scope of the Hobbs Act. And since our answer to the
second question requires an entry of judgment in petition-

ers' favor, we shall not answer the first or third questions.

## II

We first set forth the Hobbs Act's text. The relevant statutory section imposes criminal liability on

> "[w]hoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property *in furtherance of a plan or purpose to do anything in violation of this section . . . .*" 18 U. S. C. §1951(a) (emphasis added).

The question, as we have said, concerns the meaning of the phrase that modifies the term "physical violence," namely, the words "in furtherance of a plan or purpose to do anything in violation of this section." Do those words refer to violence (1) that furthers a plan or purpose to "affec[t] commerce . . . by robbery or extortion," or to violence (2) that furthers a plan or purpose simply to "affec[t] commerce"? We believe the former, more restrictive, reading of the text—the reading that ties the violence to robbery or extortion—is correct.

For one thing, the language of the statute makes the more restrictive reading the more natural one. The text that precedes the physical violence clause does not forbid *obstructing, delaying, or affecting commerce* (or the movement of any article or commodity in commerce); rather, it forbids *obstructing, delaying, or affecting commerce "by robbery or extortion." Ibid.* (emphasis added). This language means that behavior that obstructs, delays, or affects commerce is a "violation" of the statute only if that behavior also involves robbery or extortion (or related attempts or conspiracies). Consequently, the reference in the physical violence clause to actions or threats of vio-

lence "in furtherance of a plan or purpose *to do anything in violation of this section*" (emphasis added) would seem to mean acts or threats of violence in furtherance of a plan or purpose *to engage in robbery or extortion*, for that is the only kind of behavior that the section otherwise makes a violation.

This restrictive reading is further supported by the fact that Congress often intends such statutory terms as "affect commerce" or "in commerce" to be read as terms of art connecting the congressional exercise of legislative authority with the constitutional provision (here, the Commerce Clause) that grants Congress that authority. See *Allied-Bruce Terminix Cos.* v. *Dobson,* 513 U. S. 265, 273 (1995); *Russell* v. *United States,* 471 U. S. 858, 859 (1985). Such jurisdictional language may limit, but it will not primarily define, the behavior that the statute calls a "violation" of federal law. Cf. *Jones* v. *United States,* 529 U. S. 848, 854 (2000) (holding that by using the term "affecting . . . commerce," "'Congress did not define the crime described in [18 U. S. C.] §844(i) as the explosion of a building whose damage or destruction might affect interstate commerce,'" and noting that the Court must look to other "qualifying language" in the provision to define the offense).

For another thing, the statute's history supports the more restrictive reading. Congress enacted the Hobbs Act's predecessor in 1934. See Anti-Racketeering Act, ch. 569, 48 Stat. 979 (reproduced in Appendix, *infra*). That predecessor Act prohibited coercion and extortion appropriately connected with interstate commerce, and placed these prohibitions in §§2(a) and 2(b), respectively. 48 Stat. 980. The Act went on in §2(c) to impose criminal liability on anyone who, in connection with interstate commerce, "[c]ommits or threatens to commit an act of physical violence or physical injury to a person or property in furtherance of a plan or purpose to violate sections (a) or (b)." *Ibid.;* see also *NOW II,* 537 U. S., at 407. The 1934 Act

explicitly linked §2(c), the physical violence subsection, with §§2(a) and 2(b). It thereby made crystal clear that the physical violence that it prohibited was not violence in furtherance of a plan to injure commerce, but violence in furtherance of a plan to injure commerce *through coercion or extortion*.

In 1946, Congress enacted a superseding law, namely, the Hobbs Act. Ch. 537, 60 Stat. 420 (reproduced in Appendix, *infra*). The new law changed the old law in two significant respects: It added robbery while omitting coercion. *NOW II, supra*, at 407; see *United States* v. *Culbert,* 435 U. S. 371, 377 (1978) ("The bill that eventually became the Hobbs Act . . . substituted specific prohibitions against robbery and extortion for the Anti-Racketeering Act's language"). The new Act, like the old Act, was absolutely explicit in respect to the point here at issue, the necessary link between physical violence and other crimes (now extortion and robbery).

The 1946 Hobbs Act reads as follows:

> "SEC. 2. Whoever in any way or degree obstructs, delays, or affects commerce, or the movement of any article or commodity in commerce, by robbery or extortion, shall be guilty of a felony.
>
> "SEC. 3. Whoever conspires with another or with others, or acts in concert with another or with others to do anything in violation of section 2 shall be guilty of a felony.
>
> "SEC. 4. Whoever attempts or participates in an attempt to do anything in violation of section 2 shall be guilty of a felony.
>
> "SEC. 5. Whoever commits or threatens physical violence to any person or property *in furtherance of a plan or purpose to do anything in violation of section 2* shall be guilty of a felony." 60 Stat. 420 (emphasis added).

As §2 makes clear, the statute prohibits *robbery* and *extortion*. As §5's reference to §2 makes clear, the statute prohibits violence *only* when that violence furthers a plan or purpose to affect commerce by robbery or extortion. Each of the statute's other sections reflects the same approach; each explicitly refers back to §2's prohibition against robbery and extortion.

The Act's legislative history contains nothing to the contrary. Indeed, the Committee Reports and floor debates emphasized that "the purpose of the bill was 'to prevent anyone from obstructing, delaying, or affecting commerce, or the movement of any article or commodity in commerce by robbery or extortion *as defined in the bill*.'" *Culbert, supra*, at 377 (quoting H. R. Rep. No. 238, 79th Cong., 1st Sess., 9 (1945); emphasis added in *Culbert*); see *Culbert, supra,* at 376–378 (discussing legislative history). They nowhere suggested that Congress intended to make physical violence a freestanding crime.

The present Hobbs Act language is less clear than the 1946 version. But the linguistic changes do not reflect a congressional effort to redefine the crime. To the contrary, Congress revised the Hobbs Act's language in 1948 as part of its general revision of the Criminal Code. That "1948 Revision was not intended to create new crimes but to recodify those then in existence." *Morissette* v. *United States,* 342 U. S. 246, 269, n. 28 (1952). This Court has written that it will "not presume that the revision worked a change in the underlying substantive law 'unless an intent to make such [a] change[e] is clearly expressed.'" *Keene Corp.* v. *United States,* 508 U. S. 200, 209 (1993) (alteration made in *Keene*; quoting *Fourco Glass Co.* v. *Transmirra Products Corp.,* 353 U. S. 222, 227 (1957)). And here there is no evidence of any such intent. Rather, the Reviser's Notes indicate that the linguistic changes to the Hobbs Act simply amount to "changes in phraseology and arrangement necessary to effect consolidation." H. R. Rep. No. 304, 80th

Cong., 1st Sess., A131 (1947).

Finally, respondents' Hobbs Act interpretation broadens the Act's scope well beyond what case law has assumed. It would federalize much ordinary criminal behavior, ranging from simple assault to murder, behavior that typically is the subject of state, not federal, prosecution. Decisions of this Court have assumed that Congress did not intend the Hobbs Act to have so broad a reach. See *NOW II*, 537 U. S., at 405 (noting that the Hobbs Act embodied extortion, which required the obtaining of property, not coercion); *id.*, at 411 (GINSBURG, J., concurring) (coercion, which is not covered by the Hobbs Act, "more accurately describes the nature of petitioners' [non-property-related] actions" (internal quotation marks omitted)); *United States* v. *Enmons,* 410 U. S. 396, 410 (1973) (Hobbs Act does not reach violent activity by union members seeking higher wages because such violence is not extortion and Congress did not intend to "cover all overtly coercive conduct in the course of" a labor dispute).

Not surprisingly, other Courts of Appeals that have considered the question have rejected respondents' construction of the Act. See *United States* v. *Yankowski*, 184 F. 3d 1071 (CA9 1999); *United States* v. *Franks*, 511 F. 2d 25 (CA6 1975). And in 1994, Congress enacted a specific statute aimed directly at the type of abortion clinic violence and other activity at issue in this litigation, thereby suggesting it did not believe that the Hobbs Act already addressed that activity. See Freedom of Access to Clinic Entrances Act, 18 U. S. C. §248(a)(3) (imposing criminal liability on anyone who "intentionally damages or destroys the property of a facility, or attempts to do so, because such facility provides reproductive health services").

## III

Respondents' contrary claim rests primarily upon a canon of statutory construction that favors interpretations

that give a function to each word in a statute, thereby avoiding linguistic superfluity. See *United States* v. *Menasche,* 348 U. S. 528, 538–539 (1955) ("It is our duty 'to give effect, if possible, to every clause and word of a statute'" (quoting *Montclair* v. *Ramsdell,* 107 U. S. 147, 152 (1883))). They claim that, because the definitions of robbery or extortion (or related attempts or conspiracies) already encompass robbery or extortion that takes place through acts of violence (or related threats), "[t]here would be no reason for the statute to include the clause prohibiting violence and threats of violence" unless Congress intended to create a freestanding offense. Brief for Respondents 25; see 18 U. S. C. §1951(b)(1) (defining "robbery" as the "unlawful taking or obtaining of personal property . . . *by means of actual or threatened force, or violence*" (emphasis added)); §1951(b)(2) (defining "extortion" as "the obtaining of property from another . . . *by wrongful use of actual or threatened force, violence, or fear*" (emphasis added)).

Petitioners, however, have found a small amount of additional work for the words to do. Brief for Petitioners Scheidler et al. 33–36; see also Brief for United States as *Amicus Curiae* 11–12. The Scheidler petitioners point to a hypothetical mobster who threatens violence and demands payment from a business. Those threats constitute attempted extortion; but the subsequent acts of violence against a noncomplying business by the subordinates of that mobster may not constitute attempted extortion and may not be punishable as a conspiracy to commit extortion if the subordinates were not privy to the mobster's plan. A specific prohibition of physical violence in furtherance of a plan to commit extortion would bring the subordinates' behavior within the statute's coverage. The United States adds that the physical violence clause permits prosecutors to bring multiple charges for the same conduct. For instance, the clause would apply to a defendant who injured

bystanders during a robbery, permitting the Government to charge that defendant with the Hobbs Act crime of robbery and the separate Hobbs Act crime of using violence in furtherance of the robbery. Tr. of Oral Arg. 22.

We concede that this additional work is small. But the need for language to cover such instances, or perhaps simply a desire to emphasize the problem of violence, led Congress in the original 1946 version of the Hobbs Act to make clear that the statute prohibited, not all physical violence, but only physical violence in furtherance of *a plan or purpose to engage in robbery or extortion*. See *supra*, at 7–8. And it is similarly clear that Congress intended to carry this view forward into the 1948 recodification. See *supra*, at 8–9. The canons of interpretation cannot lead us to a contrary conclusion. Those canons are tools designed to help courts better determine what Congress intended, not to lead courts to interpret the law contrary to that intent. *Chickasaw Nation* v. *United States,* 534 U. S. 84, 94 (2001) (noting that "canons are not mandatory rules" but guides "designed to help judges determine the Legislature's intent," and that "other circumstances evidencing congressional intent can overcome their force").

## IV

We conclude that Congress did not intend to create a freestanding physical violence offense in the Hobbs Act. It did intend to forbid acts or threats of physical violence in furtherance of a plan or purpose to engage in what the statute refers to as robbery or extortion (and related attempts or conspiracies). The judgment of the Court of Appeals is reversed, and the cases are remanded for entry of judgment for petitioners.

*It is so ordered.*

JUSTICE ALITO took no part in the consideration or decision of these cases.

## APPENDIX TO OPINION OF THE COURT

### A

The Anti-Racketeering Act of 1934, ch. 569, 48 Stat. 979, provided:

"AN ACT

"To protect trade and commerce against interference by violence, threats, coercion, or intimidation.

"*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,* That the term 'trade or commerce', as used herein, is defined to mean trade or commerce between any States, with foreign nations, in the District of Columbia, in any Territory of the United States, between any such Territory or the District of Columbia and any State or other Territory, and all other trade or commerce over which the United States has constitutional jurisdiction.

"SEC. 2. Any person who, in connection with or in relation to any act in any way or in any degree affecting trade or commerce or any article or commodity moving or about to move in trade or commerce—

"(a) Obtains or attempts to obtain, by the use of or attempt to use or threat to use force, violence, or coercion, the payment of money or other valuable considerations, or the purchase or rental of property or protective services, not including, however, the payment of wages of a bona-fide employer to a bona-fide employee; or

"(b) Obtains the property of another, with his consent, induced by wrongful use of force or fear, or under color of official right; or

"(c) Commits or threatens to commit an act of physical violence or physical injury to a person or property in furtherance of a plan or purpose to violate sections

(a) or (b); or

"(d) Conspires or acts concertedly with any other person or persons to commit any of the foregoing acts; shall, upon conviction thereof, be guilty of a felony and shall be punished by imprisonment from one to ten years or by a fine of $10,000, or both.

"SEC. 3. (a) As used in this Act the term 'wrongful' means in violation of the criminal laws of the United States or of any State or Territory.

"(b) The terms 'property', 'money', or 'valuable considerations' used herein shall not be deemed to include wages paid by a bona-fide employer to a bona-fide employee."

### B

Title I of The Hobbs Anti-Racketeering Act of 1946, ch. 537, 60 Stat. 420, provided:

"SEC. 1. As used in this title—

"(a) The term 'commerce' means (1) commerce between any point in a State, Territory, or the District of Columbia and any point outside thereof, or between points within the same State, Territory, or the District of Columbia but through any place outside thereof, and (2) commerce within the District of Columbia or any Territory, and (3) all other commerce over which the United States has jurisdiction; and the term 'Territory' means any Territory or possession of the United States.

"(b) The term 'robbery' means the unlawful taking or obtaining of personal property, from the person or in the presence of another, against his will, by means of actual or threatened force, or violence, or fear of injury, immediate or future, to his person or property, or property in his custody or possession, or the person or property of a relative or member of his family or anyone in his company at the time of the taking or obtaining.

"(c) The term 'extortion' means the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right.

"SEC. 2. Whoever in any way or degree obstructs, delays, or affects commerce, or the movement of any article or commodity in commerce, by robbery or extortion, shall be guilty of a felony.

"SEC. 3. Whoever conspires with another or with others, or acts in concert with another or with others to do anything in violation of section 2 shall be guilty of a felony.

"SEC. 4. Whoever attempts or participates in an attempt to do anything in violation of section 2 shall be guilty of a felony.

"SEC. 5. Whoever commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of section 2 shall be guilty of a felony.

"SEC. 6. Whoever violates any section of this title shall, upon conviction thereof, be punished by imprisonment for not more than twenty years or by a fine of not more than $10,000, or both."

C

The Hobbs Act, 18 U. S. C. §1951, as amended in 1948, provides:

"(a) Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined under this title or imprisoned not more than twenty years, or both.

"(b) As used in this section—

Appendix to opinion of the Court

"(1) The term 'robbery' means the unlawful taking or obtaining of personal property from the person or in the presence of another, against his will, by means of actual or threatened force, or violence, or fear of injury, immediate or future, to his person or property, or property in his custody or possession, or the person or property of a relative or member of his family or of anyone in his company at the time of the taking or obtaining.

"(2) The term 'extortion' means the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right.

"(3) The term 'commerce' means commerce within the District of Columbia, or any Territory or Possession of the United States; all commerce between any point in a State, Territory, Possession, or the District of Columbia and any point outside thereof; all commerce between points within the same State through any place outside such State; and all other commerce over which the United States has jurisdiction.

"(c) This section shall not be construed to repeal, modify or affect section 17 of Title 15, section 52, 101–115, 151–166 of Title 29 or sections 151–188 of Title 45."