# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

May 22, 2015

Lyle W. Cayce
Clerk

No. 14-20526

In the Matter of:  DANIEL LEE RITZ, JR., also known as Bo Ritz,

Debtor

------------------------------

HUSKY INTERNATIONAL ELECTRONICS, INCORPORATED,

Appellant

v.

DANIEL LEE RITZ, JR.,

Appellee

Appeal from the United States District Court
for the Southern District of Texas

Before STEWART, Chief Judge, and KING and ELROD, Circuit Judges.

KING, Circuit Judge:

Appellant Husky International Electronics, Inc., brought this adversary proceeding against Appellee and debtor Daniel Lee Ritz, Jr., objecting to the discharge of a $163,999.38 contractual debt owed to Husky by Chrysalis Manufacturing Corp.—of which Ritz was a shareholder.  Husky sought to except the debt from discharge under either 11 U.S.C. § 523(a)(2)(A) or 11 U.S.C. § 523(a)(6).  The bankruptcy court denied all relief sought by Husky,

No. 14-20526

determining that the debt was dischargeable. The district court affirmed on appeal. For the following reasons, we AFFIRM.

## I.     Factual and Procedural Background

The facts underlying this adversary proceeding are straightforward. Appellant Husky International Electronics, Inc. ("Husky"), is a Colorado-based seller of electronic device components. From 2003 to 2007, Husky sold and delivered goods to Chrysalis Manufacturing Corp. ("Chrysalis") pursuant to a written contract. It is undisputed that Chrysalis failed to pay for all of the goods it purchased from Husky, and that Chrysalis owed a debt to Husky in the amount of $163,999.38. At all relevant times, Appellee Daniel Lee Ritz, Jr., the debtor, was in financial control of Chrysalis. Moreover, Ritz was a director of Chrysalis and owned at least 30% of Chrysalis's common stock.

Between November 2006 and May 2007, Ritz transferred a substantial amount of Chrysalis's funds to various entities controlled by Ritz. Specifically, Ritz transferred: (1) $677,622 to ComCon Manufacturing Services, Inc.; (2) $121,831 to CapNet Securities Corp. (of which Ritz held an 85% ownership interest); (3) $52,600 to CapNet Risk Management, Inc. (of which Ritz held a 100% ownership interest); (4) $172,100 to Institutional Capital Management, Inc., and Institutional Insurance Management, Inc. (of which Ritz held 40% and 100% ownership interests, respectively); (5) $99,386.90 to Dynalyst Manufacturing Corp. (of which Ritz held a 25% ownership interest); (6) $26,500 to Clean Fuel International Corp. (of which Ritz held a 20% ownership interest); and (7) $11,240 to CapNet Advisors, Inc. With respect to each of these transfers, the bankruptcy court concluded that Chrysalis did not receive reasonably equivalent value in exchange.[1] The bankruptcy court further

---

[1] Ritz does not dispute that these transfers were made, but he challenges the bankruptcy court's conclusion regarding reasonably equivalent value—contending that these entities transferred more money into Chrysalis then was transferred out. We need not

determined that during this time, Chrysalis was operational, but was not paying its debts as they became due. The bankruptcy court found that at all relevant times, the sum of Chrysalis's debts was greater than that of Chrysalis's assets at a fair valuation.

In May 2009, Husky sued Ritz in federal district court, seeking to hold Ritz personally liable for Chrysalis's $163,999.38 debt. In December 2009, Ritz filed a voluntary Chapter 7 petition for bankruptcy in the United States Bankruptcy Court for the Southern District of Texas. In March 2010, Husky filed a complaint in the bankruptcy court initiating the adversary proceeding underlying this appeal. In the complaint, Husky objected to the discharge of Ritz's alleged debt, relying on 11 U.S.C. §§ 523(a)(2)(A), 523(a)(4), and 523(a)(6).[2]

The bankruptcy court held a trial in February 2011. The court issued its Memorandum Opinion, including findings of fact and conclusions of law, in August 2011. As noted above, the court found that the transfers Ritz orchestrated were not made for reasonably equivalent value. The court also found that Husky suffered damages due to these transfers—specifically, "in the amount of $163,999.38—which represents the amount owed to Husky by Chrysalis for the goods which Husky delivered to Chrysalis." In addition, the court determined that Ritz was "not a credible witness" due to his contradictory and evasive testimony, and due to his "selective" inability to recall certain information. In its conclusions of law, the bankruptcy court first addressed whether Ritz could be held liable for Chrysalis's debt under Texas veil-piercing

---

determine whether the bankruptcy court's findings as to this issue were clearly erroneous. Whether or not Chrysalis received reasonably equivalent value for the transfers, we conclude, for the reasons discussed below, that the exceptions to discharge raised by Husky are inapplicable.

[2] The bankruptcy court determined that Husky could not prevail under Section 523(a)(4), a determination Husky does not challenge on appeal.

No. 14-20526

laws.  The court determined that, under Texas law, Husky had not established that Ritz perpetuated an "actual fraud" on Husky—a prerequisite for piercing the veil under Texas Business Organizations Code Section 21.223(b)—because Husky failed to show that Ritz made a false representation to Husky.  The bankruptcy court found that the record was "wholly devoid of any such representation made by [Ritz]."  For this same reason, the court determined that the "actual fraud" exception to discharge contained in 11 U.S.C. § 523(a)(2)(A) did not apply.  Finally, the bankruptcy court rejected the applicability of the "willful and malicious injury" exception to discharge under 11 U.S.C. § 523(a)(6), concluding that Husky failed to sufficiently brief and adduce evidence on this provision, and stating that "[t]he record is wholly devoid of any proof that [Ritz] willfully and maliciously injured Husky or Husky's property."  Accordingly, the bankruptcy court denied all of Husky's requested relief.

On appeal, the district court relied on a Fifth Circuit case issued after the bankruptcy court's decision, *Spring Street Partners-IV, L.P. v. Lam*, 730 F.3d 427 (5th Cir. 2013), in determining that Husky could pierce the corporate veil because there was sufficient circumstantial evidence suggesting that Ritz acted with the intent to hinder, delay, or defraud Husky.  Nonetheless, the court held that Husky had not established actual fraud under 11 U.S.C. § 523(a)(2)(A), which requires a misrepresentation.  Finally, the district court rejected the applicability of 11 U.S.C. § 523(a)(6), as Husky "fail[ed] to show by a preponderance of the evidence that Ritz acted willfully and maliciously."  Accordingly, the district court affirmed.  Husky timely appealed.

## II.    Standard of Review

"When a court of appeals reviews the decision of a district court, sitting as an appellate court, it applies the same standards of review to the bankruptcy court's findings of fact and conclusions of law as applied by the district court."

No. 14-20526

*Jacobsen v. Moser (In re Jacobsen)*, 609 F.3d 647, 652 (5th Cir. 2010) (internal quotation marks omitted).  Accordingly, we review conclusions of law de novo and findings of fact for clear error.  *Bank of La. v. Bercier (In re Bercier)*, 934 F.2d 689, 691 (5th Cir. 1991).  "[W]e will affirm the bankruptcy court's findings unless on the entire evidence, this court is left with the definite and firm conviction that a mistake has been committed."  *Id.* (internal quotation marks and brackets omitted).  Moreover, where, as here, "the district court has affirmed the bankruptcy court's findings, the clear error standard is strictly applied."  *Frazin v. Haynes & Boone, L.L.P. (In re Frazin)*, 732 F.3d 313, 317 (5th Cir. 2013) (internal quotation marks and brackets omitted).

## III.     Discussion

On appeal, Husky contends as a threshold matter that Ritz committed "actual fraud" under Texas Business Organizations Code Section 21.223(b) and thus can be held liable for Chrysalis's debt.  Husky further argues that the debt is excepted from discharge in bankruptcy under either the "actual fraud" clause in 11 U.S.C. § 523(a)(2)(A), or as debt due to "willful and malicious injury" under 11 U.S.C. § 523(a)(6).  Because we conclude—as did the bankruptcy and district courts—that neither of these exceptions to discharge applies, we need not reach the first issue.

### A. "Actual Fraud" Under 11 U.S.C § 523(a)(2)(A)

"The Bankruptcy Code has long prohibited debtors from discharging liabilities incurred on account of their fraud, embodying a basic policy animating the Code of affording relief only to an honest but unfortunate debtor."  *Cohen v. de la Cruz,* 523 U.S. 213, 217 (1998) (internal quotation marks omitted).  In accordance with that policy, Section 523(a)(2)(A) excepts from discharge "any debt . . . for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by . . . false pretenses, a false representation, or actual fraud."  Husky asserts that the debt at issue

5

is one for money obtained by "actual fraud." The parties vigorously dispute the meaning of this term—particularly, whether "actual fraud" can be established where, as here, the debtor made no false representation to the creditor.[3] Guided by Supreme Court and Fifth Circuit precedent, we conclude that it cannot.[4]

Husky's argument that a false representation is unnecessary to trigger the "actual fraud" clause of Section 523(a)(2)(A) rests almost exclusively on *McClellan v. Cantrell*, 217 F.3d 890 (7th Cir. 2000). In *McClellan*, a divided panel of the Seventh Circuit held that "actual fraud" under that provision "is not limited to misrepresentations and misleading omissions." 217 F.3d at 893. The court faced a situation in which the creditor sold machinery to the debtor's brother for $200,000, payable in installments. *Id.* at 892. The brother defaulted, owing the creditor more than $100,000. *Id.* The creditor sued the brother and, with the suit pending, the brother sold the machinery to his sister, the debtor, for $10; she later resold the machinery for $160,000. *Id.* The debtor was aware of the lawsuit and "was colluding with her brother to thwart [the creditor]'s collection of the debt that her brother owed him." *Id.* The debtor ultimately filed for bankruptcy, and the creditor brought an adversary proceeding to recover the debt. *Id.* At issue in *McClellan* was whether that debt was barred from discharge under the "actual fraud" clause of Section 523(a)(2)(A)—despite the fact that the debtor made no false representation to the creditor. Judge Posner, writing for the majority, distinguished the "[p]lenty of cases [that] . . . assume that fraud equals misrepresentation," as

---

[3] Husky concedes that "Ritz made no oral or written representations to Husky inducing Husky to enter into a contract with Chrysalis." Nor does Husky point to any other false representations made by Ritz to Husky.

[4] Accordingly, we need not reach Ritz's alternative arguments that: (1) the debt at issue was not "obtained by" fraud, 11 U.S.C § 523(a)(2)(A), and (2) Ritz did not make the transfers with the intent to deceive Husky.

those were "cases in which the only fraud charged was misrepresentation." *Id.* The court concluded that a fraudulent misrepresentation "is not the only form that fraud can take or the only form that makes a debt nondischargeable," *id.* at 894, relying in part on the fact that the provision covers both "false representation[s]" and "actual fraud": "[B]y distinguishing between 'a false representation' and 'actual fraud,' the statute makes clear that actual fraud is broader than misrepresentation," *id.* at 893. Accordingly, the court concluded that actually fraudulent conveyances—i.e., conveyances through which the debtor *intends* to hinder the creditor—constitute "actual fraud" under Section 523(a)(2)(A).[5] *Id.* at 894–95. The court further reasoned that the debt at issue "arose not when [the debtor's] brother borrowed money from [the creditor] but when [the debtor] prevented [the creditor] from collecting from the brother the money the brother owed him." *Id.* at 895. Accordingly, the debt was for "property . . . obtained by fraud." *Id.* In a concurrence, Judge Ripple noted that the majority's interpretation was "perhaps strained," and therefore concluded that a different exception to discharge—Section 523(a)(6)— "provides a far more direct avenue for dealing with a situation such as the one" before the court. *Id.* at 896 (Ripple, J., concurring).

No subsequent appellate court has adopted the interpretation of Section 523(a)(2)(A) endorsed by the *McClellan* majority,[6] and we decline to do so

---

[5] The court reasoned that constructively fraudulent transfers—those for which no reasonably equivalent value is received—would not constitute "actual fraud." *Id.* at 894–95.

[6] Husky mistakenly asserts that both the Sixth and Tenth Circuits have followed *McClellan*. Although *bankruptcy appellate panels* in those circuits have adopted *McClellan*'s reasoning, *see Mellon Bank, N.A. v. Vitanovich (In re Vitanovich)*, 259 B.R. 873, 877 (B.A.P. 6th Cir. 2001); *Diamond v. Vickery (In re Vickery)*, 488 B.R. 680, 691 (B.A.P. 10th Cir. 2013), no circuit court has done so, *cf. McCrory v. Spigel (In re Spigel)*, 260 F.3d 27, 32 n.7 (1st Cir. 2001) ("[W]e do not decide whether we would adopt the Seventh Circuit's reasoning [in *McClellan*].") Other bankruptcy courts have explicitly rejected the *McClellan* approach. *See, e.g., Sauer Inc. v. Lawson (In re Lawson)*, 505 B.R. 117, 123 (Bankr. D.R.I. 2014); *Blacksmith Invs. v. Woodford (In re Woodford)*, 403 B.R. 177, 188 (Bankr. D. Mass. 2009); *McKnew v. KMK Factoring, L.L.C. (In re McKnew)*, 270 B.R. 593, 618 n.40 (Bankr. E.D. Va. 2001).

today.  First, *McClellan* appears to be in tension with the Supreme Court's opinion in *Field v. Mans*, 516 U.S. 59 (1995), which "resolve[d] a conflict among the Circuits over the level of reliance that § 523(a)(2)(A) requires a creditor to demonstrate."  *Id.* at 63.  The Court reasoned that the terms "'false pretenses, a false representation, or actual fraud,' carry the acquired meaning of terms of art" and "imply elements that the common law has defined them to include." *Id.* at 69.  Because the district court treated the conduct at issue "as amounting to fraud," the Court "look[ed] to the concept of 'actual fraud' as it was understood in 1978 when the language was added to § 523(a)(2)(A)."[7]  *Id.* at 70.  The Court relied primarily on the Restatement (Second) of Torts, published shortly before Congress passed the current version of Section 523(a)(2)(A).  *Id.* The Court focused on "[t]he section on point dealing with fraudulent misrepresentation," which stated that "both actual and 'justifiable' reliance are required."  *Id.*  The Court also noted that the edition of Prosser's Law of Torts available in 1978 "states that justifiable reliance is the standard."  *Id.* at 71. Accordingly, the Court concluded that the applicable standard is "one of justifiable reliance."  *Id.* at 61.

Although not directly addressing the issue, the Court throughout its opinion in *Field* appeared to assume that a false representation is necessary to establish "actual fraud."  *See, e.g., id.* at 68 ("If Congress really had wished to bar discharge to a debtor who made unintentional and wholly immaterial misrepresentations having no effect on a creditor's decision, it could have provided that."); *see also id.* at 79 (Breyer, J., dissenting) ("I agree with the Court's holding that 'actual fraud' under 11 U.S.C. § 523(a)(2)(A) incorporates

---

[7] Prior to 1978, an earlier version of the provision "provided that debts that were 'liabilities for obtaining property by false pretenses or false representations' would not be affected by any discharge granted to a bankrupt."  *Id.* at 64.

the common-law elements of intentional misrepresentation.").[8]  The majority in *McClellan* asserted that *Field* was inapposite because "[t]he fraud there took the form of a misrepresentation" and "[n]othing in the Supreme Court's opinion suggests that misrepresentation is the only type of fraud that can give rise to a debt that is not dischargeable under section 523(a)(2)(A)." *McClellan*, 217 F.3d at 892.  Although it is true that the facts underlying *Field* involved a misrepresentation, we do not believe that the case can be so easily disregarded. Nowhere in *Field* did the Court suggest that different definitions of "actual fraud" apply depending on "the type of fraud . . . alleged." *Id.*  Rather, the Court looked to the Restatement (Second) of Torts and Prosser's Law of Torts in analyzing "*the* concept of 'actual fraud' as it was understood in 1978." *Field*, 516 U.S. at 70 (emphasis added).  Both of those sources indicate that a representation is a necessary prerequisite.  *See* Restatement (Second) of Torts § 537 (1977) ("The recipient of a fraudulent misrepresentation can recover against its maker for pecuniary loss resulting from it if, but only if . . . he relies

---

[8] Indeed, in a separate concurrence, Justice Ginsburg strongly suggested that the debt at issue would not have been dischargeable absent a representation:

> At oral argument, the following exchange between the Court and the Fields' attorney occurred:
>
>> "QUESTION: . . . Suppose the debtor here had simply transferred th[e] property without saying one word to the creditor. . . . [W]ould [the debt] then be dischargeable?  There would be no representation at all, just in violation of the agreement the debtor sells the property. . . . Dischargeable, right?
>>
>> "MR. SEUFERT: While [those are] not the facts of this case, I would agree with you, it would be dischargeable." [Tr. Of Oral Arg.] at 8–9.
>
> It bears consideration whether a debt that would have been dischargeable had the debtor simply transferred the property, in violation of the due-on-sale clause with never a word to the creditor, nonetheless should survive bankruptcy because the debtor wrote to the creditor of the prospect, albeit not the actuality, of the transfer.

*Id.* at 79 (Ginsburg, J., concurring) (alterations in original).

on the misrepresentation in acting or refraining from action . . . .");[9] William J. Prosser, Law of Torts § 106, p. 694 (4th ed. 1971) ("The representation which will serve as a basis for an action of deceit, as well as other forms of relief, usually consists, of course, of oral or written words; but it is not necessarily so limited." (footnote omitted)).  Moreover, at bottom, the Court in *Field* made clear that the meaning of "actual fraud" depends on the 1978 common law meaning of the term.  *Field,* 516 U.S. at 70.  Husky has pointed to no authority, and we are not aware of any, suggesting that the common law meaning of "actual fraud" at that time encompassed fraudulent transfers of the type at issue here.  Indeed, Husky's counsel conceded at oral argument that fraudulent transfers are statutory constructs, and are "not . . . creature[s] of the common law."

Moreover, the reasoning in *McClellan* is at best inconsistent with, if not foreclosed by, our own Fifth Circuit precedent.  In cases both prior and subsequent to *Field* and *McClellan*, we have stated in no uncertain terms:

> In order to prove nondischargeability under an "actual fraud" theory, the objecting creditor *must prove* that: (1) *the debtor made representations*; (2) at the time they were made the debtor knew they were false; (3) the debtor made the representations with the intention and purpose to deceive the creditor; (4) that the creditor

---

[9] Although some may quarrel with the *Field* Court's focus on the "fraudulent misrepresentation" provision of the Restatement in interpreting the term "actual fraud," such an argument is a challenge to *Field* itself—a decision to which we are bound.  In any event, Husky has not pointed to any other provision of the Restatement that it contends is applicable to the conduct at issue here.  Another provision does state that one may be liable to another for *nondisclosure* where "he is under a duty of care to the other to exercise reasonable care to disclose the matter in question,"—e.g., where the parties have "a fiduciary or other similar relation of trust and confidence between them."  Restatement (Second) of Torts § 551.  However, such fraud is addressed in a separate provision of Section 523—11 U.S.C. § 523(a)(4)—which excepts debts "for fraud or defalcation while acting in a fiduciary capacity."  In rejecting the applicability of that provision, the bankruptcy court determined that "[Ritz] owed no fiduciary duty to [Husky]"—a determination Husky has not challenged on appeal.

relied on such representations; and (5) that the creditor sustained losses as a proximate result of the representations.

*RecoverEdge L.P. v. Pentecost*, 44 F.3d 1284, 1293 (5th Cir. 1995) (emphasis added) (internal quotation marks and footnote omitted); *see Gen. Elec. Capital Corp. v. Acosta (In re Acosta)*, 406 F.3d 367, 372 (5th Cir. 2005) ("For a debt to be nondischargeable under section 523(a)(2)(A), the creditor must show (1) that the debtor made a representation . . . ."). Although these cases did not directly address whether fraudulent transfers may constitute "actual fraud" under Section 523(a)(2)(A), we are at the very least hesitant to hold that a creditor need not fulfill one of the express requirements we have repeatedly delineated in our test for "actual fraud."[10]

But even setting aside *Field* and our precedent, there are other reasons we choose not to follow *McClellan*. *McClellan* and its progeny rely heavily on the theory that because Section 523(a)(2)(A) includes the phrase "false representation," reading "actual fraud" to require such a representation renders the latter phrase redundant. *See McClellan*, 217 F.3d at 893; *see also In re Vickery*, 488 B.R. at 691. Although as a general rule we aim to "give effect, if possible, to every word Congress used" in construing statutes, *Pilgrim's Pride Corp. v. Comm'r of Internal Revenue*, 779 F.3d 311, 316 (5th Cir. 2015) (internal quotation marks omitted), that canon of construction is not a rigid, inviolable dictate. Such canons "are tools designed to help courts better

---

[10] We recognize that the Fifth Circuit, sitting en banc, noted that it was "*not* required to address" whether the elements of "actual fraud" listed in our prior cases "survived *Field*." *AT&T Universal Card Servs. v. Mercer (In re Mercer)*, 246 F.3d 391, 403 (5th Cir. 2001) (en banc). However, for the reasons discussed above, *Field* is entirely consistent with—and may even compel—the conclusion that a representation is a necessary prerequisite to a finding of "actual fraud." Furthermore, were a representation unnecessary, one of the main issues in *In re Mercer*—whether the use of a credit card constituted a "representation of intent to pay," *id.* at 404–07—would have been rendered irrelevant, *see id.* at 426 (Duhé, J., dissenting) ("If one can 'infer' a representation from use of the card, then the creditor is relieved of the obligation of proving that a false representation was made.").

determine what Congress intended, not to lead courts to interpret the law contrary to that intent." *Scheidler v. Nat'l Org. for Women, Inc.*, 547 U.S. 9, 23 (2006); *see also Chickasaw Nation v. United States*, 534 U.S. 84, 94 (2001) ("[T]hese canons do not determine how to read this statute. For one thing, canons are not mandatory rules. They are guides that need not be conclusive. They are designed to help judges determine the Legislature's intent as embodied in particular statutory language. And other circumstances evidencing congressional intent can overcome their force." (internal citation and quotation marks omitted)); Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 176 (2012) ("[The canon against surplusage] cannot always be dispositive because (as with most canons) the underlying proposition is not *invariably* true."). Here, although "actual fraud" was added to the statute in 1978, some have suggested that Congress did not intend to create a separate basis for dischargeability—but rather intended only to codify "the limited scope of the fraud exception" as expressed in case law "interpret[ing] 'fraud' to mean actual or positive fraud rather than fraud implied by law." *RecoverEdge*, 44 F.3d at 1292 n.16 (internal quotation marks omitted); Alan N. Resnick & Henry J. Sommer, Collier on Bankruptcy ¶ 523.08[01][e] (16th ed. 2014) ("Section 523(a)(2)(A) was intended to codify case law . . . which interpreted 'fraud' to mean actual or positive fraud rather than fraud implied by law."); *Cohen*, 523 U.S. at 221 (stating that pre- and post-1978 versions of Section 523(a)(2)(A) are "substantially similar").[11]

---

[11] Even assuming Congress intended the phrase "actual fraud" to have a meaning independent from the other phrases in that provision, this court has noted a theory under which "actual fraud" would not be redundant of those other phrases. *See In re Bercier*, 934 F.2d at 692 (reasoning that "false representations and false pretenses . . . encompass statements that falsely purport to depict *current or past facts*" while "actual fraud" concerns "promises of future action which, *at the time they were made*, [the debtor] had no intention of fulfilling"). Notably, this distinction would survive even given our conclusion that "actual fraud" requires a misrepresentation. However, we need not, and do not, expressly adopt any

We also note that another provision of the Bankruptcy Code, Section 727(a)(2), excepts from discharge certain fraudulent transfers. 11 U.S.C. § 727(a)(2)(A) ("The court shall grant the debtor a discharge, unless . . . the debtor, with intent to hinder, delay, or defraud a creditor . . . has transferred . . . property of the debtor . . . ."). It would appear odd, at the very least, for Congress to have intended that the "actual fraud" provision cover fraudulent transfers, when there is another provision directly addressing such transfers. *See United States v. $92,203.00 in U.S. Currency*, 537 F.3d 504, 509–10 (5th Cir. 2008) ("We are to read a statute as a whole, so as to give effect to each of its provisions without rendering any language superfluous." (internal citation marks omitted)). Husky did not raise this fraudulent transfer provision below. Moreover, other exceptions to discharge in the Bankruptcy Code may be rendered redundant by the *McClellan* majority's broad, omnibus construction of "actual fraud." *See* 11 U.S.C. § 523(a)(4) (excepting debts "for fraud or defalcation while acting in a fiduciary capacity"); *id.* § 523(a)(6) (excepting debts "for willful and malicious injury by the debtor to another entity or to the property of another entity").

Finally, to the extent Section 523(a)(2)(A) is ambiguous, "[e]xceptions to discharge should be construed in favor of debtors in accordance with the principle that provisions dealing with this subject are remedial in nature and are designed to give a fresh start to debtors unhampered by pre-existing financial burdens." *Fezler v. Davis (In re Davis)*, 194 F.3d 570, 573 (5th Cir. 1999); *see also Hickman v. Texas (In re Hickman)*, 260 F.3d 400, 404 (5th Cir. 2001) ("[E]xceptions to discharge are to be construed narrowly.").

---

of these theories for Congress's inclusion of "actual fraud" in Section 523(a)(2)(A). We note these theories only to suggest that, contrary to the *McClellan* majority's contention, our reading of "actual fraud" is unlikely to render the phrase meaningless or redundant.

No. 14-20526

For all of these reasons, we conclude that a representation is a necessary prerequisite for a showing of "actual fraud" under Section 523(a)(2)(A). Because the parties agree that the record contains no evidence of such a representation, discharge of the debt at issue is not barred under this provision.

## B. "Willful and Malicious Injury" Under 11 U.S.C § 523(a)(6)

Husky also challenges the bankruptcy court's conclusion that Section 523(a)(6) does not bar discharge of Ritz's alleged debt. Under that provision, a debt "for willful and malicious injury by the debtor to another entity or to the property of another entity" is excepted from discharge. 11 U.S.C. § 523(a)(6). The Supreme Court has interpreted this provision to require "a deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury." *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998). In *Kawaauhau*, the Court held that "debts arising from recklessly or negligently inflicted injuries do not fall within the compass of § 523(a)(6)." *Id.* at 64. Following *Kawaauhau*, this court has held "that an injury is 'willful and malicious' where there is either an objective substantial certainty of harm or a subjective motive to cause harm." *Miller v. J.D. Abrams, Inc. (In re Miller)*, 156 F.3d 598, 606 (5th Cir. 1998); *cf. McClendon v. Springfield (In re McClendon)*, 765 F.3d 501, 505 (5th Cir. 2014) ("[A]n individual who acts under an honest, but mistaken belief . . . cannot be said to have intentionally caused injury, because absent the fact about which there has been a mistake, legally cognizable injury would not meet the test of substantial certainty." (internal quotation marks omitted)).

In rejecting the applicability of Section 523(a)(6), the bankruptcy court stated that "[t]he record is wholly devoid of any proof that [Ritz] willfully and maliciously injured Husky or Husky's property." The court similarly concluded that Husky "failed to identify any tortious action by [Ritz] that caused a willful and malicious injury." (internal quotation marks omitted). Husky argues that

these conclusions are at odds with the bankruptcy court's factual findings that Ritz "drained substantial funds out of Chrysalis[]" through transfers that were made without Chrysalis receiving reasonably equivalent value in return.  But these findings are not incompatible with the court's rejection of Section 523(a)(6), as there appears to be scant evidence in the record indicating either that Ritz made these transfers with the intent to harm Husky, or that harm to Husky was substantially certain due to Ritz's actions.  We note that it was Husky's burden to prove this exception to dischargeability by a preponderance of the evidence, *Grogan v. Garner*, 498 U.S. 279, 291 (1991), and as the bankruptcy court noted, "no exhibits were introduced" and "no testimony was adduced . . . relating to § 523(a)(6)." *Cf. Williams v. Int'l Bhd. of Elec. Workers Local 520 (In re Williams)*, 337 F.3d 504, 511 (5th Cir. 2003) ("Although previous decisions by this circuit hold that injuries resulting from a knowing breach of contract may be nondischargeable under Section 523(a)(6), those decisions also require *explicit evidence* that a debtor's breach was intended or substantially certain to cause the injury to the creditor." (emphasis added)).  Accordingly, the bankruptcy court did not err in concluding that Section 523(a)(6) is inapplicable to the debt at issue.[12]

## C. Equitable Considerations

Finally, Husky argues that, notwithstanding the provisions discussed above, we should direct the bankruptcy court to exercise its equitable powers to "prevent the U.S. Bankruptcy Code from becoming an engine of fraud." However, such equitable powers "must be exercised in a manner that is

---

[12] We note that a portion of the bankruptcy court's analysis with respect to Section 523(a)(6) appeared to focus on Ritz's intent vis-à-vis the transaction between Husky and Chrysalis, as opposed to Ritz's intent at the time of the fraudulent transfers.  In any event, the bankruptcy court's conclusions—that the record was "*wholly* devoid" of evidence that Ritz took "*any* . . . action . . . that caused a willful and malicious injury"—were not so limited. (emphasis added).

consistent with the Bankruptcy Code," and a bankruptcy court is not permitted "to create substantive rights that are otherwise unavailable under applicable law, or constitute a roving commission to do equity." *Perkins Coie v. Sadkin (In re Sadkin)*, 36 F.3d 473, 478 (5th Cir. 1994) (per curiam) (internal quotation marks omitted). For the reasons discussed above, the statutory exceptions to discharge raised by Husky are inapplicable, and Husky cannot rely upon general principles of equity to expand those exceptions. Indeed, as noted above, another provision of the Bankruptcy Code, Section 727(a)(2), may have applied to redress the conduct of which Husky complains—but Husky failed to raise that provision below.

## IV.    Conclusion

For the foregoing reasons, we AFFIRM.