(Slip Opinion) OCTOBER TERM, 2015 1

Syllabus

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## LUNA TORRES *v.* LYNCH, ATTORNEY GENERAL

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

No. 14–1096.   Argued November 3, 2015—Decided May 19, 2016

Any alien convicted of an "aggravated felony" after entering the United States is deportable, ineligible for several forms of discretionary relief, and subject to expedited removal.  8 U. S. C. §§1227(a)(2)(A)(iii), (3).  An "aggravated felony" is defined as any of numerous offenses listed in §1101(a)(43), each of which is typically identified either as an offense "described in" a specific federal statute or by a generic label (*e.g.,* "murder").   Section 1101(a)(43)'s penultimate sentence states that each enumerated crime is an aggravated felony irrespective of whether it violates federal, state, or foreign law.

   Petitioner Jorge Luna Torres (Luna), a lawful permanent resident, pleaded guilty in a New York court to attempted third-degree arson. When immigration officials discovered his conviction, they initiated removal proceedings.   The Immigration Judge determined that Luna's arson conviction was for an "aggravated felony" and held that Luna was therefore ineligible for discretionary relief.  The Board of Immigration Appeals affirmed.  It found the federal and New York arson offenses to be identical except for the former's requirement that the crime have a connection to interstate or foreign commerce.  Because the federal statute's commerce element serves only a jurisdictional function, the Board held, New York's arson offense is "described in" the federal statute, 18 U. S. C. §844(i), for purposes of determining whether an alien has been convicted of an aggravated felony.  The Second Circuit denied review.

*Held*: A state offense counts as a §1101(a)(43) "aggravated felony" when it has every element of a listed federal crime except one requiring a connection to interstate or foreign commerce.

   Because Congress lacks general constitutional authority to punish crimes, most federal offenses include a jurisdictional element to tie

the substantive crime to one of Congress's enumerated powers. State legislatures are not similarly constrained, and so state crimes do not need such a jurisdictional hook. That discrepancy creates the issue here—whether a state offense lacking a jurisdictional element but otherwise mirroring a particular federal offense can be said to be "described" by that offense. Dictionary definitions of the word "described" do not clearly resolve this question one way or the other. Rather, two contextual considerations decide this case: §1101(a)(43)'s penultimate sentence and a well-established background principle that distinguishes between substantive and jurisdictional elements in criminal statutes. Pp. 4–21.

   (a) Section §1101(a)(43)'s penultimate sentence shows that Congress meant the term "aggravated felony" to capture serious crimes regardless of whether they are made illegal by the Federal Government, a State, or a foreign country. But Luna's view would substantially undercut that function by excluding from the Act's coverage all state and foreign versions of any enumerated federal offense containing an interstate commerce element. And it would do so in a particularly perverse fashion—excluding state and foreign convictions for many of §1101(a)(43)'s gravest crimes (*e.g.,* most child pornography offenses), while reaching convictions for far less harmful offenses (*e.g.,* operating an unlawful gambling business). Luna theorizes that such haphazard coverage might reflect Congress's belief that crimes with an interstate connection are generally more serious than those without. But it is implausible that Congress viewed the presence of an interstate commerce element as separating serious from nonserious conduct. Luna's theory misconceives the function of interstate commerce elements and runs counter to the penultimate sentence's central message—that the state, federal, or foreign nature of a crime is irrelevant. And his claim that many serious crimes excluded for want of an interstate commerce element would nonetheless count as §1101(a)(43)(F) "crime[s] of violence" provides little comfort: That alternative would not include nearly all such offenses, nor even the worst ones. Pp. 7–14.

   (b) The settled practice of distinguishing between substantive and jurisdictional elements in federal criminal statutes also supports reading §1101(a)(43) to include state analogues that lack only an interstate commerce requirement. Congress uses substantive and jurisdictional elements for different reasons and does not expect them to receive identical treatment. See, *e.g., United States* v. *Yermian*, 468 U. S. 63, 68. And that is true where, as here, the judicial task is to compare federal and state offenses. See *Lewis* v. *United States*, 523 U. S. 155, 165. Pp. 14–19.

764 F. 3d 152, affirmed.

Syllabus

KAGAN, J., delivered the opinion of the Court, in which ROBERTS, C. J., and KENNEDY, GINSBURG, and ALITO, JJ., joined. SOTOMAYOR, J., filed a dissenting opinion, in which THOMAS and BREYER, JJ., joined.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

No. 14–1096

JORGE LUNA TORRES, PETITIONER *v.* LORETTA E. LYNCH, ATTORNEY GENERAL

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

[May 19, 2016]

JUSTICE KAGAN delivered the opinion of the Court.

The Immigration and Nationality Act (INA or Act) imposes certain adverse immigration consequences on an alien convicted of an "aggravated felony." The INA defines that term by listing various crimes, most of which are identified as offenses "described in" specified provisions of the federal criminal code. Immediately following that list, the Act provides that the referenced offenses are aggravated felonies irrespective of whether they are "in violation of Federal[,] State[,]" or foreign law. 108 Stat. 4322, 8 U. S. C. §1101(a)(43). In this case, we must decide if a state crime counts as an aggravated felony when it corresponds to a specified federal offense in all ways but one— namely, the state crime lacks the interstate commerce element used in the federal statute to establish legislative jurisdiction (*i.e.,* Congress's power to enact the law). We hold that the absence of such a jurisdictional element is immaterial: A state crime of that kind is an aggravated felony.

I

The INA makes any alien convicted of an "aggravated

felony" after entering the United States deportable. See
§1227(a)(2)(A)(iii). Such an alien is also ineligible for
several forms of discretionary relief, including cancellation
of removal—an order allowing a deportable alien to re-
main in the country. See §1229b(a)(3). And because of his
felony, the alien faces expedited removal proceedings. See
§1228(a)(3)(A).

The Act defines the term "aggravated felony" by way of
a long list of offenses, now codified at §1101(a)(43). In all,
that provision's 21 subparagraphs enumerate some 80
different crimes. In more than half of those subpara-
graphs, Congress specified the crimes by citing particular
federal statutes. According to that common formulation,
an offense is an aggravated felony if it is "described in,"
say, 18 U. S. C. §2251 (relating to child pornography),
§922(g) (relating to unlawful gun possession), or, of partic-
ular relevance here, §844(i) (relating to arson and explo-
sives). 8 U. S. C. §§1101(a)(43)(E), (I). Most of the re-
maining subparagraphs refer to crimes by their generic
labels, stating that an offense is an aggravated felony if,
for example, it is "murder, rape, or sexual abuse of a mi-
nor." §1101(a)(43)(A). Following the entire list of crimes,
§1101(a)(43)'s penultimate sentence reads: "The term
[aggravated felony] applies to an offense described in this
paragraph whether in violation of Federal or State law
and applies to such an offense in violation of the law of a
foreign country for which the term of imprisonment was
completed within the previous 15 years." So, putting aside
the 15-year curlicue, the penultimate sentence provides
that an offense listed in §1101(a)(43) is an aggravated
felony whether in violation of federal, state, or foreign law.

Petitioner Jorge Luna Torres, who goes by the name
George Luna, immigrated to the United States as a child
and has lived here ever since as a lawful permanent resi-
dent. In 1999, he pleaded guilty to attempted arson in the
third degree, in violation of New York law; he was sen-

tenced to one day in prison and five years of probation. Seven years later, immigration officials discovered his conviction and initiated proceedings to remove him from the country. During those proceedings, Luna applied for cancellation of removal. But the Immigration Judge found him ineligible for that discretionary relief because his arson conviction qualified as an aggravated felony. See App. to Pet. for Cert. 21a–22a.

The Board of Immigration Appeals (Board) affirmed, based on a comparison of the federal and New York arson statutes. See *id.,* at 15a–17a. The INA, as just noted, provides that "an offense described in" 18 U. S. C. §844(i), the federal arson and explosives statute, is an aggravated felony. Section 844(i), in turn, makes it a crime to "maliciously damage[ ] or destroy[ ], or attempt[ ] to damage or destroy, by means of fire or an explosive, any building [or] vehicle . . . used in interstate or foreign commerce or in any activity affecting interstate or foreign commerce." For its part, the New York law that Luna was convicted under prohibits "intentionally damag[ing]," or attempting to damage, "a building or motor vehicle by starting a fire or causing an explosion." N. Y. Penal Law Ann. §§110, 150.10 (West 2010). The state law, the Board explained, thus matches the federal statute element-for-element with one exception: The New York law does not require a connection to interstate commerce. According to the Board, that single difference did not matter because the federal statute's commerce element is "jurisdictional"—that is, its function is to establish Congress's power to legislate. See App. to Pet for Cert. 16a–17a. Given that the two laws' substantive (*i.e.,* non-jurisdictional) elements map onto each other, the Board held, the New York arson offense is "described in" 18 U. S. C. §844(i).

The Court of Appeals for the Second Circuit denied Luna's petition for review of the Board's ruling. See 764 F. 3d 152 (2014). The court's decision added to a Circuit

split over whether a state offense is an aggravated felony when it has all the elements of a listed federal crime except one requiring a connection to interstate commerce.[1] We granted certiorari. 576 U. S. ___ (2015).

## II

The issue in this case arises because of the distinctive role interstate commerce elements play in federal criminal law. In our federal system, "Congress cannot punish felonies generally," *Cohens* v. *Virginia*, 6 Wheat. 264, 428 (1821); it may enact only those criminal laws that are connected to one of its constitutionally enumerated powers, such as the authority to regulate interstate commerce. As a result, most federal offenses include, in addition to substantive elements, a jurisdictional one, like the interstate commerce requirement of §844(i). The substantive elements "primarily define[ ] the behavior that the statute calls a 'violation' of federal law," *Scheidler* v. *National Organization for Women, Inc.*, 547 U. S. 9, 18 (2006)—or, as the Model Penal Code puts the point, they relate to "the harm or evil" the law seeks to prevent, §1.13(10). The jurisdictional element, by contrast, ties the substantive offense (here, arson) to one of Congress's constitutional powers (here, its authority over interstate commerce), thus spelling out the warrant for Congress to legislate. See *id.,* at 17–18 (explaining that Congress intends "such statutory terms as 'affect commerce' or 'in commerce' . . . as terms of art connecting the congressional exercise of legislative authority with the constitutional provision (here, the

------

[1] Compare *Espinal-Andrades* v. *Holder*, 777 F. 3d 163 (CA4 2015) (finding an aggravated felony in that circumstance); *Spacek* v. *Holder*, 688 F. 3d 536 (CA8 2012) (same); *Nieto Hernandez* v. *Holder*, 592 F. 3d 681 (CA5 2009) (same); *Negrete-Rodriguez* v. *Mukasey*, 518 F. 3d 497 (CA7 2008) (same); *United States* v. *Castillo-Rivera*, 244 F. 3d 1020 (CA9 2001) (same), with *Bautista* v. *Attorney General*, 744 F. 3d 54 (CA3 2014) (declining to find an aggravated felony).

Commerce Clause) that grants Congress that authority").

For obvious reasons, state criminal laws do not include the jurisdictional elements common in federal statutes.[2] State legislatures, exercising their plenary police powers, are not limited to Congress's enumerated powers; and so States have no reason to tie their substantive offenses to those grants of authority. See, *e.g., United States* v. *Lopez*, 514 U. S. 549, 567 (1995). In particular, state crimes do not contain interstate commerce elements because a State does not need such a jurisdictional hook. Accordingly, even state offenses whose substantive elements match up exactly with a federal law's will part ways with respect to interstate commerce. That slight discrepancy creates the issue here: If a state offense lacks an interstate commerce element but otherwise mirrors one of the federal statutes listed in §1101(a)(43), does the state crime count as an aggravated felony? Or, alternatively, does the jurisdictional difference reflected in the state and federal laws preclude that result, no matter the laws' substantive correspondence?

Both parties begin with the statutory text most directly at issue, disputing when a state offense (here, arson) is "described in" an enumerated federal statute (here, 18 U. S. C. §844(i)). Luna, armed principally with Black's Law Dictionary, argues that "described in" means "expressed" or "set forth" in—which, he says, requires the state offense to include each one of the federal law's ele-

_____

[2] That flat statement is infinitesimally shy of being wholly true. We have found a handful of state criminal laws with an interstate commerce element, out of the tens (or perhaps hundreds) of thousands of state crimes on the books. Mississippi, for example, lifted essentially verbatim the text of the federal money laundering statute when drafting its own, and thus wound up with such an element. See Miss. Code Ann. §97–23–101 (rev. 2014). But because the incidence of such laws is so vanishingly small, and the few that exist play no role in Luna's arguments, we proceed without qualifying each statement of the kind above.

ments.    Brief for Petitioner 15–16.[3]    The Government,
brandishing dictionaries of its own, contends that the
statutory phrase has a looser meaning—that "describing
entails . . . not precise replication," but "convey[ance of] an
idea or impression" or of a thing's "central features."  Brief
for Respondent 17.[4]   On that view, "described in," as op-
posed to the more precise "defined in" sometimes found in
statutes, denotes that the state offense need only incorpo-
rate the federal law's core, substantive elements.

But neither of those claims about the bare term "de-
scribed in" can resolve this case.  Like many words, "de-
scribe" takes on different meanings in different contexts.
Consider two ways in which this Court has used the word.
In one case, "describe" conveyed exactness: A contractual
provision, we wrote, "describes the subject [matter] with
great particularity[,] . . . giv[ing] the precise number of
pounds [of tobacco], the tax for which each pound was
liable, and the aggregate of the tax."  *Ryan* v. *United
States*, 19 Wall. 514, 517 (1874).  In another case, not:
"The disclosure provision is meant," we stated, "to describe
the law to consumers in a manner that is concise and
comprehensible to the layman—which necessarily means
that it will be imprecise."  *CompuCredit Corp.* v. *Green-
wood*, 565 U. S. 95, 102 (2012).  So staring at, or even
looking up, the words "described in" cannot answer
whether a state offense must replicate every last element
of a listed federal statute, including its jurisdictional one,

--------

[3] Black's Law Dictionary 401 (5th ed. 1979) (defining "describe" as to
"express, explain, set forth, relate, recount, narrate, depict, delineate,
portray").   Luna also cites Webster's New Collegiate Dictionary 307
(1976), which defines "describe" to mean "to represent or give an
account of in words."

[4] See American Heritage Dictionary of the English Language 490 (5th
ed. 2011) (defining "describe" as "[t]o convey an idea or impression of");
Webster's Third New International Dictionary 610 (1986) (defining
"describe" as "to convey an image or notion of" or "trace or traverse the
outline of").

to qualify as an aggravated felony. In considering that issue, we must, as usual, "interpret the relevant words not in a vacuum, but with reference to the statutory context." *Abramski* v. *United States*, 573 U. S. ___, ___ (2014) (slip op., at 9).[5]

Here, two contextual considerations decide the matter. The first is §1101(a)(43)'s penultimate sentence, which shows that Congress meant the term "aggravated felony" to capture serious crimes regardless of whether they are prohibited by federal, state, or foreign law. The second is a well-established background principle distinguishing between substantive and jurisdictional elements in federal criminal statutes. We address each factor in turn.

## A

Section 1101(a)(43)'s penultimate sentence, as noted

———————

[5] The dissent disagrees, contending that the word "describe" decides this case in Luna's favor because a "description cannot refer to features that the thing being described does not have." *Post,* at 5 (opinion of SOTOMAYOR, J.). Says the dissent: If a Craigslist ad "describes" an apartment as having an "in-unit laundry, a dishwasher, rooftop access, central A/C, and a walk-in closet," it does not describe an apartment lacking rooftop access. *Ibid.* That is true enough, but irrelevant. The dissent is right that when someone describes an object by a list of specific characteristics, he means that the item has each of those attributes. But things are different when someone uses a more general descriptor—even when that descriptor (as here, a federal statute) itself has a determinate set of elements. It would be natural, for example, to say (in the exact syntax of §1101(a)(43)) that a person followed the itinerary for a journey through Brazil that is "described in" a Lonely Planet guide if he traveled every leg of the tour other than a brief "detour north to Petrópolis." The Lonely Planet, On the Road: Destination Brazil, http://media.lonelyplanet.com/shop/pdfs/brazil-8-getting-started.pdf (all Internet materials as last visited May 16, 2016). And similarly, a person would say that she had followed the instructions for setting up an iPhone that are "described in" the user's manual even if she in fact ignored the one (specifically highlighted there) telling her to begin by "read[ing] important safety information" to "avoid injury." Apple, Set Up iPhone, http://help.apple.com/iphone/9/#iph3bf43d79.

above, provides: "The term [aggravated felony] applies to
an offense described in this paragraph whether in viola-
tion of Federal or State law and applies to such an offense
in violation of the law of a foreign country for which the
term of imprisonment was completed within the previous
15 years." See *supra,* at 2. That sentence (except for the
time limit on foreign convictions) declares the source of
criminal law irrelevant: The listed offenses count as ag-
gravated felonies regardless of whether they are made
illegal by the Federal Government, a State, or a foreign
country. That is true of the crimes identified by reference
to federal statutes (as here, an offense described in 18
U. S. C. §844(i)), as well as those employing generic labels
(for example, murder). As even Luna recognizes, state and
foreign analogues of the enumerated federal crimes qual-
ify as aggravated felonies. See Brief for Petitioner 21
(contesting only what properly counts as such an ana-
logue). The whole point of §1101(a)(43)'s penultimate
sentence is to make clear that a listed offense should lead
to swift removal, no matter whether it violates federal,
state, or foreign law.

Luna's jot-for-jot view of "described in" would substan-
tially undercut that function by excluding from the Act's
coverage all state and foreign versions of any enumerated
federal offense that (like §844(i)) contains an interstate
commerce element. Such an element appears in about
half of §1101(a)(43)'s listed statutes—defining, altogether,
27 serious crimes.[6] Yet under Luna's reading, only those

―――――――――

[6] See 8 U. S. C. §1101(a)(43)(D) ("an offense described in" 18 U. S. C.
§1956, which criminalizes laundering of monetary instruments); *ibid.*
("an offense described in" 18 U. S. C. §1957, which criminalizes engag-
ing in monetary transactions involving property derived from specified
unlawful activities); §1101(a)(43)(E)(i) (three "offense[s] described in"
18 U. S. C. §§842(h)–(i), 844(d), which criminalize activities involving
explosives); *ibid.* ("an offense described in" 18 U. S. C. §844(e), which
criminalizes threatening to cause death, injury, or property damage

federal crimes, and not their state and foreign counter-
parts, would provide a basis for an alien's removal—
because, as explained earlier, only Congress must ever
show a link to interstate commerce. See *supra,* at 4–5. No
state or foreign legislature needs to incorporate a com-
merce element to establish its jurisdiction, and so none
ever does. Accordingly, state and foreign crimes will never
precisely replicate a federal statute containing a commerce
element. And that means, contrary to §1101(a)(43)'s
penultimate sentence, that the term "aggravated felony"
would *not* apply to many of the Act's listed offenses irre-

---

using explosives); *ibid.* ("an offense described in" 18 U. S. C. §844(i),
which criminalizes using fire or explosives to cause property damage);
§1101(a)(43)(E)(ii) (six "offense[s] described in" 18 U. S. C. §§922(g)(1)–
(5), (j), which criminalize possessing a firearm in various circumstances);
*ibid.* (two "offense[s] described in" 18 U. S. C. §§922(n), 924(b),
which criminalize transporting or receiving a firearm under certain
circumstances); §1101(a)(43)(E)(iii) ("an offense described in" 26
U. S. C. §5861(j), which criminalizes transporting an unregistered
firearm); §1101(a)(43)(H) ("an offense described in" 18 U. S. C. §875,
which criminalizes making a threat to kidnap or a ransom demand);
*ibid.* ("an offense described in" 18 U. S. C. §1202(b), which criminalizes
possessing, receiving, or transmitting proceeds of a kidnapping);
§1101(a)(43)(I) ("an offense described in" 18 U. S. C. §2251, which
criminalizes sexually exploiting a child); *ibid.* ("an offense described in"
18 U. S. C. §2251A, which criminalizes selling a child for purposes of
child pornography); *ibid.* ("an offense described in 18 U. S. C. §2252,
which criminalizes various activities relating to child pornography);
§1101(a)(43)(J) ("an offense described in" 18 U. S. C. §1962, which
criminalizes activities relating to racketeering); *ibid.* ("an offense
described in" 18 U. S. C. §1084, which criminalizes transmitting infor-
mation to facilitate gambling); §1101(a)(43)(K)(ii) ("an offense described
in" 18 U. S. C. §2421, which criminalizes transporting a person for
purposes of prostitution); *ibid.* ("an offense described in" 18 U. S. C.
§2422, which criminalizes coercing or enticing a person to travel for
purposes of prostitution); *ibid.* ("an offense described in" 18 U. S. C.
§2423, which criminalizes transporting a child for purposes of prostitu-
tion); §1101(a)(43)(K)(iii) ("an offense described in" 18 U. S. C.
§1591(a)(1), which criminalizes sex trafficking of children, or of adults
by force, fraud, or coercion).

spective of whether they are "in violation of Federal[,] State[, or foreign] law"; instead, that term would apply exclusively to the federal variants.[7]

Indeed, Luna's view would limit the penultimate sentence's effect in a peculiarly perverse fashion—excluding state and foreign convictions for many of the gravest crimes listed in §1101(a)(43), while reaching those convictions for less harmful offenses. Consider some of the state and foreign crimes that would not count as aggravated felonies on Luna's reading because the corresponding federal law has a commerce element: most child pornography offenses, including selling a child for the purpose of manufacturing such material, see §1101(a)(43)(I); demanding or receiving a ransom for kidnapping, see §1101(a)(43)(H); and possessing a firearm after a felony conviction, see §1101(a)(43)(E)(ii). Conversely, the term "aggravated felony" in Luna's world would include state and foreign convictions for such comparatively minor offenses as operating an unlawful gambling business, see §1101(a)(43)(J), and possessing a firearm not identified by a serial number, see §1101(a)(43)(E)(iii), because Congress chose, for whatever reason, not to use a commerce element when barring that conduct. And similarly, the term would cover any state or foreign conviction for such nonviolent activity as receiving stolen property, see §1101(a)(43)(G), or forging documents, see §1101(a)(43)(R), because the INA happens to use generic labels to describe those crimes. This Court has previously refused to construe

———————

[7] The dissent replies: What's the big deal? See *post,* at 10. After all, it reasons, some listed federal statutes—specifically, those prohibiting treason, levying war against the United States, and disclosing national defense information—will lack state or foreign analogues even under our construction. See *ibid.* But Congress's inclusion of a few federal offenses that, by their nature, have no state or foreign analogues hardly excuses expelling from the Act's coverage the countless state and foreign versions of 27 other serious crimes.

§1101(a)(43) so as to produce such "haphazard"—indeed, upside-down—coverage. *Nijhawan* v. *Holder*, 557 U. S. 29, 40 (2009). We see no reason to follow a different path here: Congress would not have placed an alien convicted by a State of running an illegal casino at greater risk of removal than one found guilty under the same State's law of selling a child.[8]

In an attempt to make some sense of his reading, Luna posits that Congress might have believed that crimes having an interstate connection are generally more serious than those lacking one—for example, that interstate child pornography is "worse" than the intrastate variety. Brief for Petitioner 35. But to begin with, that theory cannot explain the set of crazy-quilt results just described: Not even Luna maintains that Congress thought local acts of selling a child, receiving explosives, or demanding a ran-

———————

[8] Luna's position, in addition to producing this bizarre patchwork of coverage, conflicts with our ordinary assumption that Congress, when drafting a statute, gives each provision independent meaning. See *United States* v. *Butler*, 297 U. S. 1, 65 (1936) ("These words cannot be meaningless, else they would not have been used"). Until its most recent amendment, §1101(a)(43)(J) provided that the term "aggravated felony" included any "offense described in [18 U. S. C. §1962] (relating to racketeer influenced corrupt organizations) for which a sentence of 5 years' imprisonment or more may be imposed." 8 U. S. C. §1101(a)(43)(J) (1994 ed., Supp. I). (That provision now incorporates two more federal crimes, and uses one year of prison as the threshold.) The federal racketeering statute cited has an interstate commerce element; analogous state and foreign laws (per usual) do not, and therefore would fall outside §1101(a)(43)(J) on Luna's reading. But if Congress had meant to so exclude those state and foreign counterparts, then §1101(a)(43)(J)'s final clause—"for which a sentence of 5 years' imprisonment may be imposed"—would have been superfluous, because federal racketeering is *always* punishable by more than five years' imprisonment, see 18 U. S. C. §1963(a). That language's presence shows that Congress thought §1101(a)(43)(J) would sweep in some state and foreign laws: The final clause served to filter out such statutes when—but only when—they applied to less serious conduct than the federal racketeering offense.

som are categorically less serious than, say, operating an unlawful casino or receiving stolen property (whether or not in interstate commerce). And it is scarcely more plausible to view an interstate commerce element in any given offense as separating serious from non-serious conduct: Why, for example, would Congress see an alien who carried out a kidnapping for ransom wholly within a State as materially less dangerous than one who crossed state lines in committing that crime? The essential harm of the crime is the same irrespective of state borders. Luna's argument thus misconceives the function of interstate commerce elements: Rather than distinguishing greater from lesser evils, they serve (as earlier explained) to connect a given substantive offense to one of Congress's enumerated powers. See *supra,* at 4–5. And still more fundamentally, Luna's account runs counter to the penultimate sentence's central message: that the national, local, or foreign character of a crime has no bearing on whether it is grave enough to warrant an alien's automatic removal.[9]

––––––––––

[9] The dissent attempts a variant of Luna's "not so serious" argument, but to no better effect. Claims the dissent: Even if Congress could not have viewed "interstate crimes [as] worse than wholly intrastate crimes," it might have thought that, say, "arsons *prosecuted* as federal crimes are more uniformly serious than arsons *prosecuted* as state crimes." *Post*, at 14 (emphasis added). But we see no call to suppose that Congress regarded state prosecutions as Grapefruit League versions of the Big Show. Cf. *Mistretta* v. *United States*, 488 U. S. 361, 427 (1989) (Scalia, J., dissenting). In our federal system, "States possess primary authority for defining and enforcing" criminal laws, including those prohibiting the gravest crimes. *Brecht* v. *Abrahamson*, 507 U. S. 619, 635 (1993). For that reason, even when U. S. Attorneys have jurisdiction, they are generally to defer to, rather than supplant, state prosecutions of serious offenses. See U. S. Attorneys' Manual: Principles of Federal Prosecution §9–27.240 (1997). And still more obviously, the dissent's theory fails with respect to foreign convictions. That a foreign sovereign prosecutes a given crime reflects nothing about its gravity, but only about its location.

Luna (and the dissent, see *post,* at 6) must therefore fall back on a different defense: that his approach would exclude from the universe of aggravated felonies fewer serious state and foreign offenses than one might think. To make that argument, Luna relies primarily on a part of the Act specifying that the term "aggravated felony" shall include "a crime of violence (as defined in [18 U. S. C. §16]) for which the term of imprisonment [is] at least one year." §1101(a)(43)(F); see 18 U. S. C. §16 (defining "crime of violence" as involving the use of "physical force" against the person or property of another). According to Luna, many state and foreign offenses failing to match the Act's listed federal statutes (for want of an interstate commerce element) would count as crimes of violence and, by that alternative route, trigger automatic removal. A different statutory phrase, or so Luna says, would thus plug the holes opened by his construction of the "described in" provisions.

Luna's argument does not reassure us. We agree that state counterparts of some enumerated federal offenses would qualify as aggravated felonies through the "crime of violence" provision. But not nearly all such offenses, and not even the worst ones. Consider again some of the listed offenses described earlier. See *supra,* at 10. The "crime of violence" provision would not pick up demanding a ransom for kidnapping. See 18 U. S. C. §875(a) (defining the crime without any reference to physical force). It would not cover most of the listed child pornography offenses, involving the distribution, receipt, and possession of such materials. It would not reach felon-in-possession laws and other firearms offenses. And indeed, it would not reach arson in the many States defining that crime to include the destruction of one's own property. See *Jordison* v. *Gonzales*, 501 F. 3d 1134, 1135 (CA9 2007) (holding that a violation of California's arson statute does not count as a crime of violence for that reason); Tr. of Oral Arg. 28–29

(Solicitor General agreeing with that interpretation).[10]  So
under Luna's reading, state and foreign counterparts to a
broad swath of listed statutes would remain outside
§1101(a)(43)'s coverage merely because they lack an ex-
plicit interstate commerce connection.  And for all the
reasons discussed above, that result would significantly
restrict the penultimate sentence's force and effect, and in
an utterly random manner.[11]

                                B

    Just as important, a settled practice of distinguishing
between substantive and jurisdictional elements of federal
criminal laws supports reading §1101(a)(43) to include
state analogues lacking an interstate commerce require-

——————

    [10] In all those States, arsons of every description (whether of one's
own or another's property) would fall outside the "crime of violence"
provision.  See Tr. of Oral Arg. 29, 46 (Solicitor General noting that the
categorical approach to comparing federal and state crimes produces
that effect).  And contrary to the dissent's suggestion, *post,* at 6, n. 2,
that would be true of the most dangerous arsons, as well as of less
serious ones.  The dissent similarly fails to take into account the
categorical approach's rigorous requirements when discussing a couple
of the non-arson offenses discussed above.  (Still others, the dissent
wholly ignores.)  It speculates that if the exact right state charge is
filed, some of that conduct "may" qualify, through the crime-of-violence
provision or some other route, as an aggravated felony.  *Ibid.*  "May" is
very much the operative word there, because—depending on the ele-
ments of the state offense chosen—that conduct also "may not."  And
the dissent never explains why Congress would have left the deporta-
tion of dangerous felons to such prosecutorial happenstance.

    [11] The dissent well-nigh embraces those consequences, arguing that a
narrow reading of "aggravated felony" would make more convicted
criminals removable under *other* statutory provisions, all of which allow
for relief at the Attorney General's discretion.  See *post,* at 8, 15 (la-
menting that aliens convicted of aggravated felonies may not "even
appeal[ ] to the mercy of the Attorney General").  But Congress made a
judgment that aliens convicted of certain serious offenses (irrespective
of whether those convictions were based on federal, state, or foreign
law) should be not only removable but also ineligible for discretionary
relief.  It is not our place to second-guess that decision.

ment. As already explained, the substantive elements of a federal statute describe the evil Congress seeks to prevent; the jurisdictional element connects the law to one of Congress's enumerated powers, thus establishing legislative authority. See *supra,* at 4–5; ALI, Model Penal Code §1.13(10) (1962). Both kinds of elements must be proved to a jury beyond a reasonable doubt; and because that is so, both may play a real role in a criminal case. But still, they are not created equal for every purpose. To the contrary, courts have often recognized—including when comparing federal and state offenses—that Congress uses substantive and jurisdictional elements for different reasons and does not expect them to receive identical treatment.

Consider the law respecting *mens rea.* In general, courts interpret criminal statutes to require that a defendant possess a *mens rea*, or guilty mind, as to every element of an offense. See *Elonis* v. *United States*, 575 U. S. \_\_\_, \_\_\_ (2015) (slip op., at 10). That is so even when the "statute by its terms does not contain" any demand of that kind. *United States* v. *X-Citement Video, Inc.*, 513 U. S. 64, 70 (1994). In such cases, courts read the statute against a "background rule" that the defendant must know each fact making his conduct illegal. *Staples* v. *United States*, 511 U. S. 600, 619 (1994). Or otherwise said, they infer, absent an express indication to the contrary, that Congress intended such a mental-state requirement.

Except when it comes to jurisdictional elements. There, this Court has stated, "the existence of the fact that confers federal jurisdiction need not be one in the mind of the actor at the time he perpetrates the act made criminal by the federal statute." *United States* v. *Feola*, 420 U. S. 671, 677, n. 9 (1975); see *United States* v. *Yermian*, 468 U. S. 63, 68 (1984) ("Jurisdictional language need not contain the same culpability requirement as other elements of the offense"); Model Penal Code §2.02. So when Congress has

said nothing about the mental state pertaining to a juris-dictional element, the default rule flips: Courts assume that Congress wanted such an element to stand outside the otherwise applicable *mens rea* requirement. In line with that practice, courts have routinely held that a crim-inal defendant need not know of a federal crime's inter-state commerce connection to be found guilty. See, *e.g.*, *United States* v. *Jinian*, 725 F. 3d 954, 964–966 (CA9 2013); *United States* v. *Lindemann*, 85 F. 3d 1232, 1241 (CA7 1996); *United States* v. *Blackmon*, 839 F. 2d 900, 907 (CA2 1988). Those courts have recognized, as we do here, that Congress viewed the commerce element as distinct from, and subject to a different rule than, the elements describing the substantive offense.

Still more strikingly, courts have distinguished between the two kinds of elements in contexts, similar to this one, in which the judicial task is to compare federal and state offenses. The Assimilative Crimes Act (ACA), 18 U. S. C. §13(a), subjects federal enclaves, like military bases, to state criminal laws except when they punish the same conduct as a federal statute. The ACA thus requires courts to decide when a federal and a state law are suffi-ciently alike that only the federal one will apply. And we have held that, in making that assessment, courts should ignore jurisdictional elements: When the "differences among elements" of the state and federal crimes "reflect jurisdictional, or other technical, considerations" alone, then the state law will have no effect in the area. *Lewis* v. *United States*, 523 U. S. 155, 165 (1998); see also *id.*, at 182 (KENNEDY, J., dissenting) (agreeing that courts should "look beyond . . . jurisdictional elements," and focus only on substantive ones, in determining whether "the ele-ments of the two crimes are the same"). In such a case, we reasoned—just as we do now—that Congress meant for the federal jurisdictional element to be set aside.

And lower courts have uniformly adopted the same

approach when comparing federal and state crimes in order to apply the federal three-strikes statute. That law imposes mandatory life imprisonment on a person convicted on three separate occasions of a "serious violent felony." 18 U. S. C. §3559(c)(1). Sounding very much like the INA, the three-strikes statute defines such a felony to include "a Federal or State offense, by whatever designation and wherever committed, consisting of" specified crimes (*e.g.,* murder, manslaughter, robbery) "as described in" listed federal criminal statutes. §3559(c)(2)(F). In deciding whether a state crime of conviction thus corresponds to an enumerated federal statute, every court to have faced the issue has ignored the statute's jurisdictional element. See, *e.g., United States* v. *Rosario-Delgado*, 198 F. 3d 1354, 1357 (CA11 1999) (*per curiam*); *United States* v. *Wicks*, 132 F. 3d 383, 386–387 (CA7 1997). Judge Wood, writing for the Seventh Circuit, highlighted the phrase "a Federal or State offense, by whatever designation and wherever committed"—the three-strikes law's version of §1101(a)(43)'s penultimate sentence. "It is hard to see why Congress would have used this language," she reasoned, "if it had meant that every detail of the federal offense, including its jurisdictional element[ ], had to be replicated in the state offense." *Id.,* at 386–387. Just so, too, in the INA—whose "aggravated felony" provisions operate against, and rely on, an established legal backdrop distinguishing between jurisdictional and substantive elements.[12]

_____

[12] The dissent declares our discussion of the three-strikes law, the Assimilative Crime Act (ACA), and *mens rea* "unhelpful" on the ground that all three contexts are somehow "differ[ent]." *Post,* at 10–13. But what makes them relevantly so the dissent fails to explain. First, the dissent errs in suggesting that the uniform judicial interpretation of the three-strikes law ignores only "place-based jurisdiction elements" (because, so says the dissent, of the phrase "wherever committed"). *Post,* at 13. As Judge Wood's analysis indicates, that is a theory of the

Luna objects to drawing that line on the ground that it is too hard to tell the difference between the two. See Brief for Petitioner 26–28 (discussing, in particular, statutes criminalizing the destruction of federal property and sending threats via the Postal Service). But that contention collides with the judicial experience just described. Courts regularly separate substantive from jurisdictional elements in applying federal criminal statutes' *mens rea* requirements; so too in implementing other laws that require a comparison of federal and state offenses. And from all we can see, courts perform that task with no real trouble: Luna has not pointed to any divisions between or within Circuits arising from the practice. We do not deny that some tough questions may lurk on the margins— where an element that makes evident Congress's regulatory power also might play a role in defining the behavior Congress thought harmful. But a standard interstate

––––––––––

dissent's own creation; the actual appellate decisions apply to *all* jurisdictional elements, not just territorial ones. Next, the dissent goes wrong in claiming that the ACA is not pertinent because this Court adopted a different method for matching *substantive* elements under that law than under the INA. See *post,* at 12. For even as the Court made that choice, it unanimously agreed that, however substantive elements should be compared, jurisdictional elements should be disregarded. See *Lewis* v. *United States,* 523 U. S. 155, 165 (1998); *id.*, at 182 (KENNEDY, J., dissenting). And finally, the dissent does nothing to undermine our point on *mens rea* by noting that Congress very occasionally dispenses with that requirement for substantive elements. See *post,* at 11. As just shown, the *default rule* respecting mental states flips as between jurisdictional and substantive elements, see *supra*, at 15–16—reflecting the view (also at play in the three-strikes and ACA contexts) that Congress generally means to treat the two differently. That leaves the dissent with nothing except its observation that when applying the beyond-a-reasonable-doubt and jury-trial requirements, the Court does not distinguish between jurisdictional and substantive elements. See *post,* at 10. But the dissent forgets that those commands are constitutional in nature; a principle of statutory interpretation distinguishing between the two kinds of elements, as best reflecting Congress's intent, could not bear on those mandates.

commerce element, of the kind appearing in a great many federal laws, is almost always a simple jurisdictional hook—and courts may as easily acknowledge that fact in enforcing the INA as they have done in other contexts.

C

Luna makes a final argument opposing our reading of §1101(a)(43): If Congress had meant for "ordinary state-law" crimes like arson to count as aggravated felonies, it would have drafted the provision to make that self-evident. Brief for Petitioner 20. Congress, Luna submits, would have used the generic term for those crimes—*e.g.*, "arson"—rather than demanding that the state law of conviction correspond to a listed federal statute. See *id.,* at 20–23. Or else, Luna (and the dissent) suggests, see *id.,* at 24; *post,* at 13, Congress would have expressly distinguished between substantive and jurisdictional elements, as it did in an unrelated law mandating the pretrial detention of any person convicted of a federal offense "described in [a certain federal statute], or of a State or local offense that would have been an offense described in [that statute] if a circumstance giving rise to Federal jurisdiction had existed," 18 U. S. C. §3142(e)(2)(A).

But as an initial matter, Congress may have had good reason to think that a statutory reference would capture more accurately than a generic label the range of state convictions warranting automatic deportation. The clause of §1101(a)(43) applying to Luna's case well illustrates the point. By referring to 18 U. S. C. §844(i), that provision incorporates not only the garden-variety arson offenses that a generic "arson" label would cover, but various explosives offenses too. See Brief for Petitioner 23, n. 7 (conceding that had Congress used the term "arson," it would have had to separately identify the explosives crimes encompassed in §844(i)). And the elements of generic arson are themselves so uncertain as to pose prob-

lems for a court having to decide whether they are present in a given state law. See Poulos, The Metamorphosis of the Law of Arson, 51 Mo. L. Rev. 295, 364, 387–435 (1986) (describing multiple conflicts over what conduct the term "arson" includes). Nor is the clause at issue here unusual in those respects: Section 1101(a)(43) includes many other statutory references that do not convert easily to generic labels. See, *e.g.,* §1101(a)(43)(E)(ii) (listing federal statutes defining various firearms offenses). To be sure, Congress used such labels to describe some crimes qualifying as aggravated felonies—for example, "murder, rape, or sexual abuse of a minor." §1101(a)(43)(A). But what is good for some crimes is not for others. The use of a federal statutory reference shows only that Congress thought it the best way to identify certain substantive crimes—not that Congress wanted (in conflict with the penultimate sentence) to exclude state and foreign versions of those offenses for lack of a jurisdictional element.

Still more, Congress's omission of statutory language specifically directing courts to ignore those elements cannot tip the scales in Luna's favor. We have little doubt that "Congress could have drafted [§1101(a)(43)] with more precision than it did." *Graham County Soil & Water Conservation Dist.* v. *United States ex rel. Wilson*, 545 U. S. 409, 422 (2005). But the same could be said of many (even most) statutes; as to that feature, §1101(a)(43) can join a well-populated club. And we have long been mindful of that fact when interpreting laws. Rather than expecting (let alone demanding) perfection in drafting, we have routinely construed statutes to have a particular meaning even as we acknowledged that Congress could have expressed itself more clearly. See, *e.g., ibid.*; *Florida Dept. of Revenue* v. *Piccadilly Cafeterias, Inc.*, 554 U. S. 33, 41 (2008); *Scarborough* v. *United States*, 431 U. S. 563, 570–571, 575 (1977). The question, then, is not: Could Congress have indicated (or even did Congress elsewhere

Opinion of the Court

indicate) in more crystalline fashion that comparisons of federal and state offenses should disregard elements that merely establish legislative jurisdiction?  The question is instead, and more simply: Is that the right and fair reading of the statute before us?  And the answer to that question, given the import of §1101(a)(43)'s penultimate sentence and the well-settled background rule distinguishing between jurisdictional and substantive elements, is yes.

### III

That reading of §1101(a)(43) resolves this case.  Luna has acknowledged that the New York arson law differs from the listed federal statute, 18 U. S. C. §844(i), in only one respect: It lacks an interstate commerce element.  See Pet. for Cert. 3.  And Luna nowhere contests that §844(i)'s commerce element—featuring the terms "in interstate or foreign commerce" and "affecting interstate or foreign commerce"—is of the standard, jurisdictional kind.  See Tr. of Oral Arg. 12, 19; *Scheidler*, 547 U. S., at 17–18 (referring to the phrases "affect commerce" and "in commerce" as conventional "jurisdictional language").  For all the reasons we have given, such an element is properly ignored when determining if a state offense counts as an aggravated felony under §1101(a)(43).  We accordingly affirm the judgment of the Second Circuit.

*It is so ordered.*

# SUPREME COURT OF THE UNITED STATES

———————

No. 14–1096

———————

## JORGE LUNA TORRES, PETITIONER *v.* LORETTA E. LYNCH, ATTORNEY GENERAL

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE SECOND CIRCUIT

[May 19, 2016]

Jᴜsᴛɪᴄᴇ Sᴏᴛᴏᴍᴀʏᴏʀ, with whom Jᴜsᴛɪᴄᴇ Tʜᴏᴍᴀs and Jᴜsᴛɪᴄᴇ Bʀᴇʏᴇʀ join, dissenting.

The Immigration and Nationality Act (INA) metes out severe immigration consequences to a noncitizen convicted of any of a number of "aggravated felon[ies]."  8 U. S. C. §1101(a)(43).  An offense "described in" 18 U. S. C. §844(i)— a federal arson statute—qualifies as such a crime.

In this case, petitioner, who goes by George Luna, was convicted of third-degree arson under N. Y. Penal Law Ann. §150.10 (West 2010), which punishes anyone who (1) "intentionally" (2) "damages," by (3) "starting a fire or causing an explosion," (4) "a building or motor vehicle." By contrast, the federal arson statute, 18 U. S. C. §844(i), applies when someone (1) "maliciously" (2) "damages or destroys," (3) "by means of fire or an explosive," (4) "any building, vehicle, or other real or personal property" (5) "used in interstate or foreign commerce."  There is one more element in the federal offense than in the state offense—(5), the interstate or foreign commerce element. Luna thus was not convicted of an offense "described in" the federal statute.  Case closed.

Not for the majority.  It dubs the fifth element "jurisdictional," then relies on contextual clues to read it out of the statute altogether.  As a result of the majority's sleuthing, Luna—a long-time legal permanent resident—is foreclosed

from even appealing to the sound discretion of the Attorney General to obtain relief from removal. Because precedent and the text and structure of the INA require the opposite result, I respectfully dissent.

## I
## A

Noncitizens convicted of crimes face various consequences under the INA. Among the harshest of those consequences fall on noncitizens convicted of 1 of the approximately 80 "aggravated felonies." A crime that falls into one of the listed provisions can be an aggravated felony "whether in violation of Federal or State law" or "in violation of the law of a foreign country." See 8 U. S. C. §1101(a)(43).

An aggravated felony conviction has two primary repercussions for noncitizens: It renders them deportable, §1227(a)(2)(A)(iii), and it makes them categorically ineligible for several forms of immigration relief ordinarily left to the discretion of the Attorney General. See, *e.g.,* §§1229b(a)–(b) (cancellation of removal).

The dozens of aggravated felonies in the INA are specified in two main ways. First, some are specified by reference to a generic crime. It is an aggravated felony, for instance, to commit "murder, rape, or sexual abuse of a minor." §1101(a)(43)(A). Some of those crimes use a federal definition as one of the elements. For example: "Illicit trafficking in a controlled substance (*as defined in* [21 U. S. C. §802])." 8 U. S. C. §1101(a)(43)(B) (emphasis added). ("Illicit trafficking" is a generic crime; the element of "controlled substance" takes the meaning in 21 U. S. C. §802, the "Definitions" provision of the Controlled Substances Act.)

Second, it lists crimes that are wholly "described in" the federal criminal code. See, *e.g.,* §1101(a)(43)(H) ("an offense described in section 875, 876, 877, or 1202 of title 18

(relating to the demand for or receipt of ransom)");
§1101(a)(43)(I) ("an offense described in section 2251,
2251A, or 2252 of title 18 (relating to child pornography)").
The Government contends that Luna committed a crime in
this second category: an "offense described in" 18 U. S. C.
§844(i), which criminalizes arson. 8 U. S. C. §1101(a)(43)(E)(i).

## B

In 2006, Luna was found removable from the United
States. He attempted to apply for cancellation of removal,
a form of relief available to long-time legal permanent
residents at the discretion of the Attorney General.
§1229b(a). Nothing in Luna's history would otherwise
preclude cancellation. He was the sole source of financial
support for his U. S. citizen fiancée, enrolled in college and
studying engineering, a homeowner, and a law-abiding
legal permanent resident since he was brought to the
United States as a child over 30 years ago, aside from the
one third-degree arson conviction at issue in this case, for
which he served a day in jail.

But the Immigration Judge found—and the Board of
Immigration Appeals and the Second Circuit confirmed—
that Luna was ineligible for cancellation of removal.
Luna's New York State arson conviction, the judge held,
qualified as an aggravated felony under the provision for "an
offense described in" §844(i), a federal arson statute. See
§1101(a)(43)(E)(i). Aggravated felons are ineligible for can-
cellation of removal. See §1229b(a)(3). Luna's cancellation-
of-removal application was thus summarily denied.

## II

But the offense of which Luna was convicted is *not*
"described in" §844(i). This Court's ordinary method of
interpreting the aggravated felony statute, the plain text
of that provision, and the structure of the INA all confirm
as much.

### A

This is not the first time the Court has been tasked with determining whether a state offense constitutes an "aggravated felony" under the INA. Until today, the Court has always required the state offense to match *every* element of the listed "aggravated felony." *Kawashima* v. *Holder*, 565 U. S. ___, ___ (2012) (slip op., at 4); see also *Moncrieffe* v. *Holder*, 569 U. S. ___, ___ (2013) (slip op., at 4–5); *Carachuri-Rosendo* v. *Holder*, 560 U. S. 563, 580 (2010); *Nijhawan* v. *Holder*, 557 U. S. 29, 33 (2009); *Gonzales* v. *Duenas-Alvarez*, 549 U. S. 183, 185 (2007); *Lopez* v. *Gonzales*, 549 U. S. 47, 52–53 (2006); *Leocal* v. *Ashcroft*, 543 U. S. 1, 8 (2004).

Our ordinary methodology thus confirms that the federal arson statute does not describe the New York arson statute under which Luna was convicted. As I have outlined above, see *supra*, at 1, the federal statute is more limited: It applies only to fires that involve "interstate or foreign commerce." The state statute contains no such limitation. Thus, under the approach we have used in every case to date, the omission of the interstate commerce element means that Luna's state arson conviction was not an aggravated felony under the INA.

### B

The plain language of the statute supports this straightforward approach. The word "describe" means to "express," "portray," or "represent." See Black's Law Dictionary 445 (6th ed. 1990); Webster's Third New International Dictionary 610 (1986). A description may be "detailed" or it may be general, setting forth only the "recognizable features, or characteristic marks," of the thing described while leaving the rest to the imagination. 4 Oxford English Dictionary 512 (2d ed. 1989). For example, a Craigslist ad describing an apartment with "in-unit laundry, a dishwasher, rooftop access, central A/C, and a walk-in

closet" may leave much to the imagination. After all, the description does not mention the apartment's square footage, windows, or floor number. But though the ad omits features, we would still call it a "description" because it accurately conveys the "recognizable features" of the apartment.

However, even the most general description cannot refer to features that the thing being described does not have. The ad is only an accurate description if the apartment "described in" it has *at least* the five features listed. If the apartment only has four of the five listed features—there is no rooftop access, say, or the walk-in closet is not so much walk-in as shimmy-in—then the Craigslist ad no longer "describes" the apartment. Rather, it *mis*describes it.

So, too, with the statutes in this case. The federal description can be general as long as it is still accurate—that is, as long as the state law has at least all of the elements in the federal law. But there is no meaning of "describe" that allows the Court to say §844(i) "describes" the New York offense when the New York offense only has four of the five elements listed in §844(i). Section 844(i) misdescribes the New York offense just as surely as the too-good-to-be-true Craigslist ad misdescribes the real-life apartment.

C

The structure of the INA confirms that conclusion and makes clear that we need not contort the ordinary, accepted meaning of the phrase "described in." The INA has many overlapping provisions that assign carefully calibrated consequences to various types of criminal convictions. The Court thus need not interpret any provision—and certainly none of the aggravated felony provisions, among the harshest in the INA—as broadly as possible because the INA as a whole ensures that serious criminal conduct

is adequately captured.

That overlapping structure is apparent throughout the INA. First, the aggravated felony list itself has multiple fail-safe provisions. Most serious offenses, for instance, will qualify as "crime[s] of violence . . . for which the term of imprisonment [is] at least one year," 8 U. S. C. §1101(a)(43)(F), even if they are not covered by a more specific provision in the aggravated felony list. Had his crime been charged as a more serious arson and had he been punished by one year of imprisonment instead of one day, Luna might have qualified as an aggravated felon under that provision. See *Santana* v. *Holder*, 714 F. 3d 140, 145 (CA2 2013) (second-degree arson in New York is a "crime of violence").[1]

_____

[1] Many of the majority's own examples of "the gravest" state offenses supposedly excluded from the aggravated felony list by Luna's reading actually fall within these fail-safe provisions. *Ante,* at 10. Many state arsons will qualify as "crime[s] of violence" under 8 U. S. C. §1101(a)(43)(F), see, *e.g., Mbea* v. *Gonzales*, 482 F. 3d 276, 279 (CA4 2007); an even greater fraction of the most serious arsons will fall under that heading because States like New York have enacted gradated statutes under which more severe degrees of arson are crimes of violence, see *Santana*, 714 F. 3d, at 145. To take another of the majority's examples, while a state conviction for demanding a ransom in a kidnaping is not "an offense described in [18 U. S. C. §875]" under §1101(a)(43)(H), a state conviction for kidnaping or conspiring to kidnap may qualify as a crime of violence under §1101(a)(43)(F). See *United States* v. *Kaplansky*, 42 F. 3d 320 (CA6 1994).

And even under the majority's reading, a state-law conviction will only qualify as an aggravated felony if the "right state charge is filed." *Ante,* at 14, n. 10. For example, even on the majority's reading, a state-court defendant who sells a child for purposes of child pornography is unlikely to be convicted of "an offense described in [18 U. S. C.] §2251A," see §1101(a)(43)(I). That is because virtually no States have a statute corresponding to 18 U. S. C. §2251A, with or without the interstate commerce element. (But see Fla. Stat. §847.0145 (2015).) Such a defendant may, however, be convicted of a state offense that qualifies as an aggravated felony for conspiring to commit sexual abuse of a minor under 8 U. S. C. §§1101(a)(43)(U) and 1101(a)(43)(A).

Second, other sections of the INA provide intertwining coverage for serious crimes. Some examples of provisions that encompass many offenses include those for the commission of a "crime involving moral turpitude," a firearms offense, or a controlled substance offense, all of which will render a noncitizen removable, even if he or she has not committed an aggravated felony. See §§1227(a)(2)(A)(i), (B)(i), (C); §§1182(a)(2)(A)(i)–(ii). Cf. *Judulang* v. *Holder*, 565 U. S. 42, 48 (2011) (commenting on the breadth of the "crime involving moral turpitude" provision).[2]

And finally, in Luna's case or anyone else's, the Attorney General can exercise her discretion to deny relief to a serious criminal whether or not that criminal has been convicted of an aggravated felony. See *Carachuri-Rosendo,* 560 U. S., at 581 (doubting that a narrow reading of §1101(a)(43) will have "any practical effect on policing our Nation's borders").

To be sure, on Luna's reading, some serious conduct may not be captured by the INA. But not nearly so much as the majority suggests. By contrast, once the aggravated felony statute applies to a noncitizen, no provision in the INA—and virtually no act by the Attorney General—can prevent him or her from being removed.

Looking for consistency in the aggravated felony provisions of the INA is often a fool's errand. See *Kawashima*, 565 U. S., at \_\_\_, n. 2 (slip op., at 9, n. 2) (GINSBURG, J., dissenting) (noting the absurdity of making a tax misde-

———————

[2] Other crimes in the majority's list of serious offenses, *ante,* at 10–14, will be covered by these separate INA provisions. For example, the Board of Immigration Appeals has held that any child pornography offense is a "crime involving moral turpitude," rendering a noncitizen removable in many cases. See §§1227(a)(2)(A)(i), 1182(a)(2)(A)(i); *In re Olquin-Rufino*, 23 I. & N. Dec. 896 (BIA 2006). Any offense involving a gun would make a noncitizen deportable under one of the catchall provisions for buying, selling, or possessing a firearm in violation of "any law." See §1227(a)(2)(C).

meanor, but not driving while drunk and causing serious bodily injury, an aggravated felony). But the structure of the INA gives the Court no reason to read the aggravated felony provisions as broadly as possible.[3] That is why this Court has repeatedly cautioned against interpreting the aggravated felony section to sweep in offenses that—like many state arson convictions—may be neither aggravated nor felonies. See *Carachuri-Rosendo*, 560 U. S., at 574; Brief for National Association of Criminal Defense Lawyers et al. as *Amici Curiae* 28–29 (collecting state misdemeanor arson statutes).

## III

The majority denies Luna the opportunity to present his case to the Attorney General based on two "contextual

─────────

[3] If the aggravated felony provisions were the primary mechanism for removing serious noncitizen criminals, we would expect *any* noncitizen convicted of an aggravated felony to face immigration consequences. In fact, the aggravated felony provisions only apply to noncitizens who are lawfully admitted or later paroled. *Matter of Alyazji*, 25 I. & N. Dec. 397, 399 (BIA 2011). Other noncitizens—such as undocumented immigrants, noncitizens applying for a visa, or some legal permanent residents returning after an extended stay abroad—cannot be removed based on the conviction of an aggravated felony; the Government must rely on the other provisions of the INA, including the statute's other criminal provisions, to remove such noncitizens. See §§1101(a)(13)(A), 1182, 1227(a)(2)(A)(iii).

Similarly, if the aggravated felony provision were the only way to ensure that the Attorney General exercised her discretion wisely, we would expect that discretion to be constrained as to *all* noncitizens who potentially pose a threat to the United States. In fact, the Attorney General is not prevented from granting cancellation of removal—the discretionary relief at issue in this case—to, for instance, a noncitizen who has not been convicted of a crime but is removable for having "received military-type training" from a terrorist organization. See §§1227(a)(4)(B), 1182(a)(3)(B)(i)(VIII), 1229b(a).

In short, it cannot be the case that the aggravated felony provisions were intended to be the statute's sole mechanism for identifying the most dangerous noncitizens.

considerations," *ante,* at 7, and an intuition about how the statute ought to work. None are sufficiently persuasive to overcome the most natural reading of the aggravated felony statute.

## A

The majority first perceives a conflict between Luna's reading of the INA and what it calls the "penultimate sentence" of the aggravated felony statute. The "penultimate sentence" provides that an offense can be an aggravated felony "whether in violation of Federal or State law" or "in violation of the law of a foreign country." 8 U. S. C. §1101(a)(43). The majority claims that Luna's reading of the INA would vitiate the quoted proviso. *Ante,* at 8–10.

It is true that, on Luna's reading, *some* of the aggravated felonies listed in the INA (including "an offense described in" §844(i)) will have no state or foreign analog. But the proviso still applies to generic offenses, which constitute nearly half of the entries in the aggravated felony list. See, *e.g.,* §§1101(a)(43)(A), (G), (M)(i). And that already-large portion jumps to close to three-quarters of the offenses after counting those many listed federal statutes with no jurisdictional element. See, *e.g.,* §§1101(a)(43)(C), (E)(ii), (J). In fact, it applies to the vast majority of offenses adjudicated under the INA given that most serious crimes are also "crimes of violence." See §1101(a)(43)(F).[4]

And the majority must admit that its interpretation will also leave entries in the aggravated-felony section with no state or foreign analogs. For instance, it seems unlikely that the proviso contemplates state analogs for the aggra-

––––––––
[4] When the proviso was added to the INA in 1990, it would have applied to an even greater fraction of the aggravated felonies: At that time, the aggravated felony statute listed only five offenses, four of which would have had state analogs even on Luna's reading. See 104 Stat. 5048 (1990).

vated felony provisions regarding treason, levying war against the United States, or disclosing national defense information. See §§1101(a)(43)(L)(i), (P).

In other words, under Luna's reading, the "penultimate sentence" applies to most, but not all, of the entries of the aggravated felony statute; under the majority's reading, the "penultimate sentence" also applies to most, but not all, of the entries of the aggravated felony statute. The majority's first "contextual consideration" thus supplies no reason to prefer one reading over the other.

B

Just as important, the majority suggests, is a "settled practice of distinguishing between substantive . . . elements"—those that define "the evil Congress seeks to prevent"—and "jurisdictional element[s]," which merely "establis[h] legislative authority." *Ante,* at 15. The majority admits that the Court does *not* distinguish between substantive and jurisdictional elements for many purposes, such as proof beyond a reasonable doubt and the right to a jury trial. *Ibid.*; see *Ring* v. *Arizona*, 536 U. S. 584, 606 (2002). But it nonetheless insists on a standard distinction so entrenched that Congress must have intended it to apply even absent any particular indication in the INA.

None of the three examples that the majority proffers is evidence of such a strong norm. First, the majority invokes our rules for interpreting criminal statutes. *Ante,* at 15–16. Whereas our general assumption is that a defendant must know each fact making his conduct illegal, courts generally hold that a criminal defendant need not know the facts that satisfy the jurisdictional element of a statute.

But jurisdictional elements are not the only elements a defendant need not know. Under the "default rule," *ante,* at 18, n. 12, for interpreting so-called "public welfare"

offenses, courts have held that a defendant need not know that the substance he possesses is a narcotic, that the device he possesses is unregistered, or that he reentered the United States after previously being deported. See *Staples* v. *United States*, 511 U. S. 600, 606–609, 611 (1994) (citing *United States* v. *Balint*, 258 U. S. 250 (1922), and *United States* v. *Freed*, 401 U. S. 601 (1971)); *United States* v. *Burwell*, 690 F. 3d 500, 508–509 (CADC 2012); *United States* v. *Giambro*, 544 F. 3d 26, 29 (CA1 2008); *United States* v. *Martinez-Morel*, 118 F. 3d 710, 715–717 (CA10 1997). But surely the majority would not suggest that if we agree with those holdings regarding *mens rea*, we must then ignore the "controlled substance" element of the drug trafficking aggravated felony, the "unregistered" element of the unregistered firearms aggravated felony, or the "following deportation" element of the illegal reentry aggravated felony. See 8 U. S. C. §§1101(a)(43)(B), (E)(iii), (M)(i), (O). So there is likewise no reason to believe that the "default rule" for assigning *mens rea* to jurisdictional elements is embedded in the INA.

The majority next points to two of the many statutes that, like the INA, require comparing the elements of federal and state offenses. But in each case, it is the statute's language and context, not some "settled practice," *ante,* at 15, that command the omission of the jurisdictional element.

The majority's first example, *ante,* at 16–17, is the Assimilative Crimes Act, 18 U. S. C. §13(a), a gap-filling statute that incorporates state criminal law into federal enclaves if the "act or omission" is not "made punishable by any enactment of Congress" but "would be punishable if committed or omitted within the jurisdiction of the State." The Court held that, in identifying such a gap, courts should ignore "jurisdictional, or other technical," differences between a state and federal statute. *Lewis* v. *United States*, 523 U. S. 155, 165 (1998). But the way courts

match the elements of a state law to a federal analog under the Assimilative Crimes Act differs fundamentally from our INA inquiry. The basic question under the Assimilative Crimes Act is whether "federal statutes reveal an intent to occupy so much of the field as would exclude the use of the particular state statute at issue." *Id.,* at 164. Under the Assimilative Crimes Act, the state statute is not compared to a single federal statute, but rather to a complex of federal statutes that roughly cover the same general conduct and "policies." *Ibid.* That statute thus has little to teach us about 8 U. S. C. §1101(a)(43): In interpreting the Assimilative Crimes Act, every Member of the Court rejected the simple elements-matching approach that the Court generally employs to construe the aggravated felony provisions of the INA. See 523 U. S., at 182 (KENNEDY, J., dissenting) (allowing "slight differences" in definition between federal and state statute and using "same-elements inquiry" only as a "starting point").

The majority's analogy to the federal three strikes statute, 18 U. S. C. §3559(c)(2)(F), *ante,* at 17–18, is similarly unhelpful. That provision counts as a predicate "'serious violent felony'" any "'Federal or State offense . . . *wherever committed*, consisting of'" various crimes, including several "'as described in'" federal statutes. *Ante,* at 17. (emphasis added). Though this Court has not construed the statute, the majority notes that courts of appeals disregard the jurisdictional element of federal statutes in assessing whether a state conviction is for a "serious violent felony." *Ante*, at 15–16. But nearly all of the statutes listed in §3559(c)(2)(F) contain place-based jurisdiction elements—the crime must take place "within the special maritime and territorial jurisdiction of the United States," *e.g.,* §1111(b), or within "the special aircraft jurisdiction of the United States," 49 U. S. C. §46502, and so on. In the two cases cited by the majority, for instance, *ante,* at 17, Courts of Appeals concluded that a state robbery offense

qualified as an offense "described in" the federal bank robbery statute even though the robbery did not take place in a bank. See *United States* v. *Wicks*, 132 F. 3d 383, 387 (CA7 1997); *United States* v. *Rosario-Delgado*, 198 F. 3d 1354, 1357 (CA11 1999). In that statute, it is the "wherever committed," not some loose construction of "described in," that specifically instructs the courts that the location where a crime occurs does not matter.

Moreover, in other statutes where Congress wants to exclude jurisdictional elements when comparing state and federal offenses, it ordinarily just says so. See, *e.g.,* 18 U. S. C. §3142(e)(2)(A) (requiring detention of defendant pending trial if "the person has been convicted . . . of a State or local offense that would have been an offense described in subsection (f)(1) of this section if a circumstance giving rise to Federal jurisdiction had existed"); §2265A(b)(1)(B); §2426(b)(1)(B); §3142(f)(1)(D); §5032; 42 U. S. C. §§671(a)(15)(D)(ii)(I)–(II); §§5106a(b)(2)(B)(xvi)(I)–(II). Absent comparably clear language, the Court should not presume that the INA intended deportability to depend on a not-so-"settled practice," *ante*, at 15, of occasionally distinguishing between substantive and jurisdictional elements.

## C

Finally, the majority suggests that it would be "peculiarly perverse," *ante,* at 10, to adopt Luna's plain-text reading of the statute because it would draw a distinction among crimes based on a jurisdictional element that the majority assumes is wholly divorced from "the evil Congress seeks to prevent," *ante,* at 15. The jurisdictional element of a federal statute, the majority asserts, is as trivial as the perfunctory warning on a new electronic device: "[A] person would say that she had followed the instructions for setting up an iPhone that are 'described in' the user's manual, even if she in fact ignored the one" instructing

that she "begin by 'read[ing] important safety infor-mation.'" *Ante,* at 7, n. 5; see also *ibid.* (comparing juris-dictional element to a "detour" in a 3-week itinerary).

For instance, the majority assumes that it would not be "plausible," *ante,* at 12, for Congress to have thought that interstate crimes are worse than wholly intrastate crimes. Perhaps. But when faced with an offense that, like arson, admits of a range of conduct, from the minor to the seri-ous, Congress *could* plausibly have concluded that arsons prosecuted as federal crimes are more uniformly serious than arsons prosecuted as state crimes and counted only the former as aggravated felonies. See, *e.g.,* Klein et al., Why Federal Prosecutors Charge: A Comparison of Fed-eral and New York State Arson and Robbery Filings, 2006–2010, 51 Houston L. Rev. 1381, 1406, 1416–1419 (2014) (finding that arsons prosecuted federally involve more property damage and more injury than arsons prosecuted under state law).

That is because, far from being token, "conventional jurisdictional elements" serve to narrow the kinds of crimes that can be prosecuted, not just to specify the sovereign that can do the prosecuting. Take the federal statute at issue in this case. Section 844(i) requires that the property destroyed be "used in interstate . . . com-merce." The Court has held that "standard, jurisdictional" element, *ante,* at 21, demands the property's "active em-ployment for commercial purposes, and not merely a pas-sive, passing, or past connection to commerce." *Jones* v. *United States*, 529 U. S. 848, 855 (2000). As a result, the Court held that a defendant who threw a Molotov cocktail through the window of an owner-occupied residential house could not be guilty under §844(i) because the house was not "active[ly] used" in interstate commerce. *Id.*, at 851. Surely, however, a New York prosecutor could have secured a conviction under N. Y. Penal Law Ann. §150.10 had the same crime been prosecuted in state, rather than

federal, court.

The difference between an offense under N. Y. Penal Law Ann. §150.10 and an offense under 18 U. S. C. §844(i) is thus more than a technical consideration about which authority chooses to prosecute. It is a difference that goes to the magnitude and nature of the "evil," *ante,* at 15, itself.

\*  \*  \*

On the majority's reading, long-time legal permanent residents with convictions for minor state offenses are foreclosed from even appealing to the mercy of the Attorney General. Against our standard method for comparing statutes and the text and structure of the INA, the majority stacks a supposed superfluity, a not-so-well-settled practice, and its conviction that jurisdictional elements are mere technicalities. But an element is an element, and I would not so lightly strip a federal statute of one. I respectfully dissent.